Kathy DAGUE, Individually and Special
Administratrix, Estate of John R.
Dague, Deceased, Appellant,

v.

PIPER AIRCRAFT CORPORATION,
Appellee.

No. 181S24.

Supreme Court of Indiana.

March 26, 1981.

Rehearing Denied May 11, 1981.

Frank E. Tolbert, Miller, Tolbert & Wildman, Logansport, for appellant.

Peter G. Tamulonis, Kighlinger, Young, Gray & DeTrude, Indianapolis, for appellee.

PIVARNIK, Justice.

This cause comes to us on an order for certification under Ind.R.App.P. 15(O) from the United States Court of Appeals, Seventh Circuit. The case originated in federal district court for the Northern District of Indiana, due to the diversity of citizenship of the parties. Plaintiff is special administratrix of the estate of John R. Dague, her deceased husband. She filed a four count complaint against defendant Piper Aircraft Corporation, seeking damages for the wrongful death of her husband.

The decedent died as a result of injuries sustained in the crash of the Piper Pawnee aircraft he was piloting. The crash occurred on July 7, 1978, and decedent Dague succumbed on September 5, 1978. Plaintiff filed her complaint on October 1, 1979, alleging that John Dague's injuries and death were caused by a defective condition in the aircraft. It is undisputed that defendant Piper Aircraft Corporation manufactured the plane in 1965 and placed the aircraft in the stream of commerce on March 26, 1965.

The federal district court sustained Piper Aircraft's motion for summary judgment on the ground that the action is barred by section five of the Indiana Product Liability Act, Ind.Code § 33–1–1.5–5 (Burns § 34–4–20A–5 (1980 Supp.)). The district court further held that section five does not contra-

vene article one, section twelve, nor article four, section nineteen of the Indiana Constitution. Plaintiff then prosecuted an appeal to the Seventh Circuit Court of Appeals.

The Court of Appeals determined that the substantive law of Indiana controls the questions presented on the appeal, and that there are no clear and controlling precedents from the Supreme Court of Indiana from which a determination of all of the issues may be made. Accordingly, the Court of Appeals has certified the following questions to us and requested our instruction thereon:

(1) Does the statute of limitations in the Product Liability Act apply to bar this action, in view of the word "or" between the two statutory periods of time?;

(2) Does this statute of limitation apply to bar this action, notwithstanding plaintiff's contention that defendant's alleged failure to warn occurred within the statutory period of limitations?;

(3) Does this statute of limitation contravene article one, section twelve of the Indiana Constitution?; and

(4) Does the Product Liability Act contravene article four, section nineteen of the Indiana Constitution?

In 1965, Piper Aircraft manufactured a Piper Pawnee PA–25–235 aircraft, bearing serial number 25–3263 and Federal Aviation Administration number N7317Z. As noted above, Piper Aircraft first sold this plane and placed it in the stream of commerce on March 26, 1965. On July 7, 1978, near Logansport, Indiana, the plane crashed and burned while being flown by plaintiff's decedent, John Dague. As a result of injuries sustained in that crash, John Dague died on September 5, 1978.

Piper Aircraft Corporation contends that this cause is barred by section five of the 1978 Product Liability Act. Ind.Code § 33–1–1.5–5 (Burns § 34–4–20A–5) provides:

"This section applies to all persons regardless of minority or legal disability. Notwithstanding Ind.Code § 34–1–2–5, any product liability action must be com-

menced within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight years but not more than ten years after the initial delivery, the action may be commenced at any time within two years after the cause of action accrues."

Under Piper Aircraft's interpretation of this statute, our legislature intended to place an outer limit of ten years on all product liability actions, except where the cause of action accrues more than eight (but less than ten) years after initial delivery of the product. On the other hand, plaintiff argues the statute provides for two alternative periods of limitation. In support of this contention, plaintiff points to the legislature's use of the disjunctive "or" in describing the time limitations. Plaintiff also argues this section violates article one, section twelve and article four, section nineteen of the Indiana Constitution. We shall address these issues in the sequence in which they are presented by the Court of Appeals' certified questions order.

### I.

■ In construing an Indiana statute, our duty is to ascertain and give effect to the intent of the legislature. In doing so, we must give meaning to the language used, where that meaning is clear and unambiguous. Where the meaning of the statute is ambiguous, however, or where one or more constructions are apparently possible, we must construe the statute so as to arrive at the apparent intention of the legislature which is consistently revealed in all sections of the act, and consistent with all other statutes passed by the legislature. *See, e. g., Loza v. State*, (1975) 263 Ind. 124, 128–29, 325 N.E.2d 173, 176; *State ex rel. Bynum v. LaPorte Superior Court*, (1973) 259 Ind. 647, 650, 291 N.E.2d 355, 356; *Thompson v. Thompson*, (1972) 259 Ind. 266, 273, 286 N.E.2d 657, 661; *Allen County Dep't of Public Welfare v. Ball Memorial Hosp. Ass'n*, (1969) 253 Ind. 179, 184–85, 252 N.E.2d 424, 427; *State v. Gilbert*, (1966) 247 Ind. 544, 219 N.E.2d 892, 895.

■ The clear intention of the legislature in section five was to limit the time within which product liability actions can be brought. However, under plaintiff's interpretation, which emphasizes the legislature's use of the disjunctive "or," the three phrases of this section are not reconcilable with each other. In addition, such an interpretation would give nothing more to or take nothing more from the plaintiff than she already had under our general limitation statutes already in existence at the time the act was passed. *See* Ind.Code § 34–1–2–1 et seq. (Burns 1973). Plaintiff would have us interpret the statute to give a claimant the right to bring an action within two years after it accrues, without any reference to the length of time which has passed since the initial entry of the product into commerce. If the legislature had intended such a rule, they could simply have stated it in those terms. The obvious intent of the statute, however, is that the action must be brought within two years after it accrues, but in any event within ten years after the product is first delivered to the initial user or consumer, unless the action accrues more than eight but less than ten years after the product's introduction into the stream of commerce.

Our Court of Appeals recognized this proposition in *Amermac, Inc. v. Gordon*, (1979) Ind.App., 394 N.E.2d 946, 948 n.4, with the following observation:

"Although not deciding the issue, we note that Indiana's recently enacted Products Liability Act, Ind.Code (1978 Supp.) § 33–1–1.5–1 (Acts 1978, P.L. 141, Sec. 28), may shed light upon the Legislature's intentions as the applicable statute of limitations in these situations. First, although somewhat confusingly drafted, *see* J. Vargo & J. Leibman, *Survey of Recent Developments in Products Liability*, 12 Ind.L.Rev. 227, 249 (1979), the legislature clearly intended to place an *absolute* time limit on liability for a product's defects, including actions in negligence. Ind.Code (1978 Supp.) § 33–1–1.5–1. This policy would be defeated by applying a tort limitation which would not begin to

run until *after* an injury, no matter when that injury occurred. Second, the Legislature specifically differentiated between actions in tort (negligence and strict liability) and warranty actions. Ind.Code (1978 Supp.) § 33–1–1.5–1. This, too, would seem to indicate that a contract statute of limitations would apply in actions for personal injuries due to a breach of implied warranty."

Legal scholars have reached a similar conclusion:

"Reference to House Bill No. 1258 reveals language similar to the enacted bill, with the exception that the two limitation provisions are joined with the word 'and' rather than 'or'. Although the legislature in conference committee might have chosen a completely opposite course to that introduced in the House, such an analysis would find the clause following, 'initial user or consumer,' to be mere surplusage: This clause states: '[E]xcept that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues. *Unless the ten-year period was intended to be an outer cutoff, there would be no need to state again that the plaintiff has two years in which to bring his action if his injury occurs during the ninth or tenth year of the life of the product.* The purpose of this clause is clearly to insure that all plaintiffs injured within ten years of delivery will, nevertheless, have a full two years to file a claim."

J. Vargo & J. Leibman, *supra*, 12 Ind.L.Rev. at 250 (emphasis added).

█ We find this argument to be persuasive. We are also persuaded by Piper Aircraft's contention that plaintiff's proposed interpretation not only ignores the clear legislative intent, it also would produce the irrational result of granting persons injured by a new product ten years to file suit, while granting only two years to all others. Plaintiff correctly argues that the interpretation of the statute we now

adopt, in effect, changes the disjunctive term "or," which, of course, appears in the statute, to the conjunctive "and." While terms of this type should ordinarily be given their literal and normal definition when it is apparent that the resulting meaning was intended, this Court is not bound to blindly give effect to the word "or," when a disjunctive reading of the terms of the section would render meaningless a portion of the statute. Likewise, the term "or" should not be given its ordinary meaning when such an application flies in the face of a clearly contrary legislative intent. *State v. Myers*, (1896) 146 Ind. 36, 38, 44 N.E. 801, 802; *Armstrong v. State ex rel. Klaus*, (1918) 72 Ind.App. 303, 317–18, 120 N.E. 717, 721. Moreover, we are at liberty to make minor substitutions of words where necessary to give vitality to the legislative intent. *See generally Woerner v. City of Indianapolis*, (1961) 242 Ind. 253, 261–63, 177 N.E.2d 34, 37–38, *cert. denied*, (1962) 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526. Therefore, we hold that section five of the Product Liability Act bars plaintiff's action in this cause, inasmuch as the damages incurred by plaintiff occurred more than ten years after the product was first placed in commerce.

## II.

█ Plaintiff Dague next argues that, even if it should be found that section five bars her claim relating to the defendant's acts enumerated in the statute, that portion of her complaint alleging a failure to warn of the product's dangerous nature would not be so barred. Dague contends that Piper Aircraft had a continuing duty to warn users of those dangerous features of its product of which it had knowledge, and that this duty—and the defendant's negligent failure to perform it—allegedly occurred within the statutory period. Thus, she claims, Piper Aircraft's alleged negligence began during the ten-year time limit and was continuing, and the statute of limitations does not bar an action grounded on this theory. We hold, however, that section five likewise bars plaintiff's cause of action based on a negligent failure to warn the user of the aircraft's alleged defect.

Ind.Code § 33–1–1.5–1 (Burns § 34–4–20A–1 (1980 Supp.)) states:

"This chapter shall govern all product liability actions, including those in which the theory of liability is negligence or strict liability in tort; provided, however, that this chapter does not apply to actions arising from or based upon any alleged breach of warranty."

Section two of the act (Burns' Ed. § 34–4–20A–2) defines the key terms used in the act. Thus, a "product liability action" includes: "all actions brought for or on account of personal injury, disability, disease, death or property damage caused by or resulting from, the manufacture, construction or design of any product." Plaintiff asserts that the duty to warn is a general one and is in no way peculiar to the law of products liability. Therefore, her argument runs, because the legislature did not specifically refer to claims resulting from the alleged failure of a manufacturer or seller to warn a potential customer or user of its product's latently defective nature, then it must be presumed that the legislature did not intend this act to apply to such an action.

■ We are not persuaded by this argument. First, if the legislature had intended to insert this exclusion in the act, it could easily have done so. As a matter of fact, an exclusion of this type was placed in section one, where breach of warranty claims are specifically excluded from the chapter's application. Second, it seems clear the legislature intended that the act govern *all* product liability actions, whether the theory of liability is negligence or strict liability in tort. This is what the legislature expressly said in section one.

■ It is true, as plaintiff asserts, that the manner in which a person can be negligent concerning a duty to warn in the context of product liability is not peculiar to that field of law. The same type of negligence, of course, can and does appear in other fields of tort law. However, an action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action based on a theory of negligence, and, ultimately, is one in which the claim is made that the damage was caused by or *resulted from* the manufacture, construction or design of the product. *See* Ind.Code § 33–1–1.5–2, *supra.* The Product Liability Act expressly applies to all product liability actions sounding in tort, including those based upon the theory of negligence, and the legislature clearly intended that *no* cause of action would exist on any such product liability theory after ten years. It is not our office to question the wisdom of the legislature's enactments. As a reviewing court, we will not substitute our judgment or opinion on such matters for that of the legislature. *Johnson v. St. Vincent Hosp., Inc.,* (1980) Ind., 404 N.E.2d 585, 591; *Short v. Texaco, Inc.,* (1980) Ind., 406 N.E.2d 625, 632; *Sidle v. Majors,* (1976) 264 Ind. 206, 209, 341 N.E.2d 763, 766; *Blue v. Beach,* (1900) 155 Ind. 121, 126, 56 N.E. 89, 91. Irrespective of the defendant's continuing duty to warn of any latent defects of which it had knowledge, and its alleged continuing breach of that duty, *see, e. g., Travis v. Rochester Bridge Co.,* (1919) 188 Ind. 79, 122 N.E. 1, plaintiff's cause of action for such negligence did not accrue until her decedent was harmed. This, of course, occurred more than ten years after the plane was placed in the stream of commerce. For this reason, sections one and five of the act bar this cause of action.

### III.

Plaintiff Dague next contends the Product Liability Act violates article one, section twelve of the Indiana Constitution. That provision states in part: "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Plaintiff argues that, since the act restricts or cuts off her product liability claims based on strict liability or negligence without providing an alternative remedy, it thereby deprives her of access to open court, and is therefore violative of this constitutional provision.

We observe at the outset that our legislature clearly has the power to abrogate or modify common law rights and remedies. In *Sidle v. Majors, supra,* we stated: "Both this Court and the United States Supreme Court have upheld the right of states to abolish or modify the common law." 264 Ind. at 209, 341 N.E.2d at 766. In that case, we quoted at length from *Gallegher v. Davis,* (Del.Super.1936) 183 A. 620, wherein the court noted that one of the acknowledged functions of legislation is to change the common law to reflect change of time and circumstances. Moreover, there is no vested or property right in any rule of the common law, and the right to bring a common law action is not a fundamental right. *Johnson v. St. Vincent Hosp., Inc., supra; Sidle v. Majors, supra; Southern Ry. Co. v. Howerton,* (1914) 182 Ind. 208, 220, 105 N.E. 1025, 1029. Plaintiff here is not in the position of having had a vested right taken from her. Her cause of action had not yet accrued at the time the no-cause provision became effective under the act; at the time of her loss and damages, there was no cause of action existing, by virtue of section five's time limitations. Thus, she had no vested right in a remedy.

Plaintiff further contends that if a common law right is to be taken away, something must be given in return. This *quid pro quo* argument posits that if the legislature eliminates or modifies a non-vested common law right or remedy, it must substitute some other right or remedy to the person allegedly aggrieved by the defendant's act but foreclosed by legislation. We have previously rejected such an argument. *Johnson v. St. Vincent Hosp., Inc., supra; Sidle v. Majors, supra.* As the Court explained in *Gallegher v. Davis, supra :*

> "[N]o one has a vested interest in any rule of the common law. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, within constitutional limits, may be changed at the will of the legisla-

ture. The great office of statutes is to remedy defects in the common law as they develop, and to adapt to the change of time and circumstance.

. . . . . .

Negligence is merely the disregard of some duty imposed by law; and the nature and extent of the duty may be modified by legislation, with a corresponding change in the test of negligence, . . . and as said by the [United States Supreme Court] with respect to the Fourteenth Amendment, in *Silver v. Silver,* [(1927) 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221, 225] when that case was before it, 'We need not . . . elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.'"

183 A. at 624, *quoted in Sidle v. Majors, supra,* 264 Ind. at 223, 341 N.E.2d at 774.

An act of the General Assembly is clothed with a strong presumption of constitutionality. *Johnson v. St. Vincent Hosp., Inc., supra; Short v. Texaco, Inc., supra.* All reasonable doubts must be resolved in favor of constitutionality, and neither the parties nor this Court can merely question the wisdom or desirability of legislation. *Id.; Sidle v. Majors, supra; Welsh v. Sells,* (1963) 244 Ind. 423, 428, 192 N.E.2d 753, 757, *appeal dismissed,* (1964) 376 U.S. 649, 84 S.Ct. 983, 11 L.Ed.2d 979; *First Sav. & Loan of Ind. v. Furnish,* (1977) Ind.App., 367 N.E.2d 596, 600. We hold that the Product Liability Act does not contravene article one, section twelve of the Indiana Constitution.

## IV.

Finally, plaintiff Dague argues that the Product Liability Act contravenes article four, section nineteen of the Indiana Constitution. The provision in question states: "An act, except an act for the codification, revision or rearrangement of laws, shall be confined to one subject and matters properly connected therewith." The Product Liability Act under consideration here was passed as section twenty-eight of Public

Law 141 of the Acts of 1978. Public Law 141 consists of twenty-eight sections, and is entitled: "An Act to Amend I.C. 33 concerning courts and court officers and product liability." The first twenty-seven sections generally concern the operation and jurisdiction of the various courts of Indiana. All twenty-eight sections of the act revise various sections of Title 33 of the Indiana Code.

One basic principle of our review is that, in considering the validity of an act under this constitutional provision, a very liberal interpretation is to be applied, with all doubts resolved in favor of the legislation's validity. *See Orbison v. Welsh,* (1962) 242 Ind. 385, 393, 179 N.E.2d 727, 731. In *State ex rel. Test v. Steinwedel,* (1932) 203 Ind. 457, 467–68, 180 N.E. 865, 868, we observed:

"[T]he only test which this Court can apply is the indefinite one of 'reasonableness,' a standard and not a specific rule of law. Section 19, art. 4 does not by restricting the contents of an 'act' to one subject, contemplate a metaphysical singleness of idea or thing, but rather that there must be some rational unity between the matters embraced in the act, the unity being found in the general purpose of the act and the practical problems of efficient administration. It is hardly necessary to suggest that matters which ordinarily would not be thought to have any common features or characteristics might, for purposes of legislative treatment, be grouped together and treated as one subject. For purposes of legislation, 'subjects' are not absolute existences to be discovered by some sort of *a priori* reasoning, but are the result of classification for convenience of treatment and for greater effectiveness in obtaining the general purpose of the particular legislative act. And if, from the standpoint of legislative treatment, there is any reasonable basis for the grouping together in one 'act' of various matters, this court cannot say that such matters constitute more than one subject."

We further noted in *Stith Petroleum Co. v. Ind. Dep't of Audit and Control,* (1937) 211 Ind. 400, 409, 5 N.E.2d 517, 521:

"Authorities are numerous upon the general subject, covering a wide variety of subjects, and hold that if there is any reasonable basis for grouping together in one act various matters of the same nature, and the public cannot be deceived reasonably thereby, the act is valid. *State ex rel. Test v. Steinwedel,* (1932) 203 Ind. 457, 180 N.E. 865; *Baldwin v. State,* (1924) 194 Ind. 303, 141 N.E. 343; *Maule Coal Co. v. Partenheimer,* (1900) 155 Ind. 100, 55 N.E. 751; *Bright v. McCullough,* (1866) 27 Ind. 223."

Thus, this Court has traditionally given broad interpretation to the one-subject requirement, and thereby allowed legislative combinations of matters which, at first blush, might appear quite diverse. *See, e. g., Orbison v. Welsh, supra,* (legislation providing powers concerning eminent domain, administrative law and criminal law combined in Indiana Port Commission Act); *Ule v. State,* (1935) 208 Ind. 255, 194 N.E. 140 (1925 Act concerning registration of motor vehicles, regulation of motor vehicles on public highways, licensing of chauffeurs, garagemen's liens on motor vehicles, and hit-and-run drivers); *State ex rel. Test v. Steinwedel, supra* (one act combining provisions relating to school attendance by minors and provision concerning employment of minors); *Wright v. McCullough, supra* (1852 Act concerning, *inter alia,* election of highway supervisors and assessment of road tax).

It is clear in the case before us that the legislature was aware of the contents of Public Law 141 when the act was passed. There is no basis for finding that some trick was employed to attach the Product Liability Act to the other provisions of the act, so that the public would be deceived by its location. In fact, the title of the act specifically mentions the subject matter of section twenty-eight. Plaintiff does not claim that these evils are present in Public Law 141 or, more particularly, in section twenty-eight of the act. The broad subject in the

act is the construction, operation and jurisdiction of Indiana courts. Thus, it would not be clearly unreasonable to conclude that the Product Liability Act should fall under that heading. In view of these factors and the broad constructions we have given in the application of this constitutional provision, we cannot say that the grouping together of the subjects in this act was so unreasonable as to be repugnant to the Indiana Constitution. We hold this act does not contravene article four, section nineteen.

The Clerk of this Court is directed to certify copies of this opinion to Chief Judge Thomas E. Fairchild, Judge Luther M. Swygert, and Judge Robert A. Sprecher of the United States Court of Appeals for the Seventh Circuit.

GIVAN, C. J., and DeBRULER, HUNTER, and PRENTICE, JJ., concur.