Ivan AVERY, Mary Avery, and Joseph Swango, by his next friend, Mary Avery, Plaintiffs,

v.

MAPCO GAS PRODUCTS, INCORPORATED, doing business as Thermo Gas Company of New Paris, Defendant–Appellant,

v.

HONEYWELL, INCORPORATED, Defendant–Appellee.

Ivan AVERY, Mary Avery, and Joseph Swango, by his next friend, Mary Avery, Plaintiffs–Appellants,

v.

MAPCO GAS PRODUCTS, INCORPORATED, doing business as Thermo Gas Company of New Paris, Defendant,

and

Honeywell, Incorporated, Defendant–Appellee.

Nos. 92–1094, 92–3418 and 92–3462.

United States Court of Appeals, Seventh Circuit.

Argued May 5, 1993.

Decided March 8, 1994.

Howard Grimm, Jr., John M. Haecker (argued), Fort Wayne, IN, Kurt B. Grimm, Auburn, IN, for Ivan Avery, Mary Avery and Joseph Swango in No. 92–1094.

Branch R. Lew, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, IN, Robert Kohorst (argued), Harlan, IA, for Mapco Gas Products, Inc. dba Thermo Gas Co. of New Paris.

Thomas R. Lemon, Kirk Weikart, Warsaw, IN, George W. Flynn (argued in No. 92–3462), Jeannine L. Lee, Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, MN, for Honeywell, Inc. in Nos. 92–1094 and 92–3462.

John M. Haecker (argued), Fort Wayne, IN, Kurt B. Grimm, Auburn, IN, for Ivan Avery, Mary Avery and Joseph Swango in Nos. 92–3418 and 92–3462.

George W. Flynn (argued), Jeannine L. Lee, Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, MN, for Honeywell, Inc. in No. 92–3418.

Before EASTERBROOK and ROVNER, Circuit Judges, and WILLIAMS, District Judge.[*]

ILANA DIAMOND ROVNER, Circuit Judge.

The explosion of a furnace gave rise to this personal injury suit against Mapco Gas Products, Incorporated ("Mapco") and Honeywell, Incorporated ("Honeywell"). Honeywell, which manufactured a valve that allegedly triggered the explosion, moved for summary judgment on the plaintiffs' product liability claims and on Mapco's cross-claims for contribution and indemnity. The district court granted the motion, and the plaintiffs subsequently settled their remaining claims against Mapco. Mapco and the plaintiffs now appeal the summary judgment ruling in favor of Honeywell. We affirm.

## I. BACKGROUND

On the morning of May 18, 1988, Ivan and Mary Avery awoke to the smell of gas in their home in rural Noble County, Indiana. Believing the odor to be a sign that their gas storage tank was empty, Ivan Avery telephoned their gas supplier, Thermo Gas Company of New Paris ("Thermo Gas"), a wholly owned subsidiary of Mapco, to report the odor and request a gas delivery. He made a similar call later in the day as did Mary Avery, who informed Mapco that the odor was stronger. A Thermo Gas employee finally arrived that evening. Although he delivered the gas as requested, the employee failed to check for a gas leak or to re-ignite the pilot lights on the home's gas appliances. After the employee left, Mary Avery and her son, Joseph Swango, went into the home's basement to investigate the persistent gas odor and check the furnace pilot light. When Mary Avery turned on a flashlight to inspect the furnace, the furnace exploded. She and her son suffered burns over 65 percent of their bodies. The house sustained structural damage, and some of the Averys' personal property was destroyed. Ivan Avery claims a loss of consortium.

The Averys' furnace was fueled by liquid petroleum ("LP") gas, more commonly known as propane. A valve manufactured by Honeywell regulated the flow of gas into the furnace. Honeywell had recalled the valve in 1980 after concluding that it might fail to perform a critical safety function. Honeywell had determined that when the pilot flame on a furnace was extinguished, the valve might still permit gas to flow into the furnace burner when the thermostat called for heat. Whereas natural gas would be vented harmlessly through the flue, LP gas, which is heavier than air, might pool around the furnace and create the potential for an explosion. The Averys allege that this is precisely what caused their own furnace to explode.

Honeywell conducted the valve recall with the approval and oversight of the Consumer Product Safety Commission and in cooperation with LP gas suppliers like Mapco. Suppliers were asked either to supply Honeywell with a list of their customers, so that Honeywell could contact them directly or, in the alternative, to contact their customers on Honeywell's behalf. In April 1983, Thermo Gas notified Honeywell that it had mailed recall notices to its customers with their monthly statements. Theoretically, the Averys' predecessors should have received such a notice. However, the prior owners of the home could not recall receiving a notice, and the appropriate repairs were never made pursuant to the recall.

The Averys contend that Honeywell is liable under theories of negligence, strict liability, breach of express and implied warranties, negligent recall, and fraudulent reporting under the federal Consumer Product Safety Act. They also allege that Mapco was negligent in delivering gas to their home, inspecting the gas supply system, and in failing to warn them of the dangers attending use of LP gas. In its cross-claim, Mapco contends that it is entitled to contribution from Honeywell as a joint tort feasor and indemnity as Honeywell's agent for purposes of the valve recall.

The district court granted summary judgment on each of the claims against Honey-

[*] The Honorable Spencer Williams, of the Northern District of California, sitting by designation.

well. The court concluded that the negligence and strict liability claims were barred by the Indiana Products Liability Act's ten-year statute of repose, because the furnace had been installed in the Averys' home no later than 1975 (thirteen years before the explosion) and there was no evidence that any work involving replacement of the valve had been done more recently. The court found the negligent recall claim similarly time-barred inasmuch as it appeared to rest on Honeywell's failure to warn consumers about the purported defect in its product, and the Indiana Supreme Court has held that failure to warn claims merge with the underlying product liability claims. *See Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 212 (Ind.1981). The court turned aside arguments that the statute of repose violated the Indiana and United States constitutions and that Honeywell was estopped from invoking the statute of repose. The court further concluded that the Averys lacked the requisite privity with Honeywell to assert breach of warranty claims, and that the federal Consumer Product Safety Act did not permit a private cause of action, *see Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936 (7th Cir.1988). Finally, the court found that Mapco had no basis on which to seek either contribution or indemnity from Honeywell. The court noted that absent a contractual provision to the contrary, Indiana law generally does not permit contribution or indemnity among joint tort feasors; and although Indiana recognizes an exception to this rule in the context of a principal-agent relationship, it does so only when the agent itself is without fault (*see Sears, Roebuck & Co. v. Boyd*, 562 N.E.2d 458, 461 (Ind.App. 1990)), which the evidence did not suggest was the case here.

## II. ANALYSIS

The Averys and Mapco raise a number of issues on appeal, but only three merit our attention: (1) whether there is a dispute of material fact sufficient to bar application of the statute of repose on summary judgment; (2) whether Indiana recognizes an independent claim for negligent recall that might survive the statute of repose; and (3) whether Mapco possesses a viable claim for contribution or indemnity against Honeywell. We review the district court's decision on each of these questions de novo. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Porter v. Whitehall Lab., Inc.*, 9 F.3d 607, 612 (7th Cir.1993).

### A. Statute of Repose

■ Section 5 of the Indiana Products Liability Act provides:

> [A]ny product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Ind.Code § 33–1–1.5–5(b) (1988).[1] Thus, under the most generous application of the statute, the Averys were required to file suit within two years of the explosion, and the explosion must have occurred not more than ten years after delivery of the Honeywell valve to the initial user or consumer. *See Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1435 (7th Cir.1988), *Dague*, 418 N.E.2d at 210. There is no dispute that the Averys filed suit within the two-year limitations period. Whether their cause of action accrued within the ten-year period of repose depends on when the Honeywell valve was delivered to the initial user or consumer.[2] The Averys'

---

1. The wording and organization of this section were modified in 1989, but the substance of the pertinent provisions remains the same. *See* Ind. Code § 33–1–1.5–5(a), (b) (Supp.1992).

2. Honeywell contends that the manufacturer of the furnace should be considered the initial "user" of the valve. Under that view, assuming that the valve in the furnace on the date of the explosion was the original, the period of repose would have begun to run in 1969, when the Averys' furnace was assembled. The district court rejected this argument, concluding that for purposes of its consumer protection law, Indiana does not deem the manufacturer of a product to

furnace was manufactured by International Heater Company ("International") in 1969, and it may have been installed in the Averys' home as early as that same year, but in any event no later than 1975.[3] Consequently, if the valve in the furnace on the date of the explosion was the original valve, then the Averys' negligence and strict liability claims are without question barred. Only if the valve was replaced within ten years of the explosion might the Averys' suit be timely. *See Richardson v. Gallo Equip. Co.*, 990 F.2d 330, 331–32 (7th Cir.1993). Although the evidence may not rule out this scenario, the district court concluded that the mere possibility that the valve had been replaced was insufficient to avoid summary judgment, absent some evidence indicating that the valve was *in fact* replaced at some point within the period of repose. We agree.

As the party seeking summary judgment based on the statute of repose, Honeywell bears the initial burden of identifying evidence tending to show that its valve was installed in the Averys' furnace more than ten years before the explosion. *See generally Hefti v. Internal Revenue Service*, 8 F.3d 1169, 1171 (7th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323, 106 S.Ct.

2548, 2552, 2553, 91 L.Ed.2d 265 (1986)). Once Honeywell has met this burden, however, the Averys are obligated to come forward with evidence sufficient to establish a genuine factual dispute as to when the valve was installed. Because the Averys would bear the burden at trial of establishing avoidance of the statute of repose (*see Nichols v. Amax Coal Co.*, 490 N.E.2d 754, 755 (Ind.1986)), their failure to offer proof sufficient to support a jury finding in their favor on this point would compel summary judgment in favor of Honeywell. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *see also Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12; *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988).

■ The record reveals no evidence that the Honeywell valve was installed within the ten years prior to the explosion. The valve bore coding indicating that it was manufactured in November 1968 and that it was intended to be used as original equipment rather than as a replacement part. R. 71, Honeywell's Answers to Plaintiffs' First Set of Interrogatories at 7 ¶ 15; R. 80 at 2–3, ¶¶ 4–7.[4] This would suggest that the valve

---

be the initial user of its component parts. Order at 8–9. Accordingly, the court held the owner of the Avery home at the time the furnace was installed to be the initial consumer or user. *Id.* at 9. We find it unnecessary to reach this issue, for assuming that this holding was correct, it is clear that the Averys' product liability claims are still beyond the ten-year period of repose.

**3.** According to Frederic Reinhardt, an engineer employed by International in 1969, because there was at that time a high demand for the company's LP gas furnaces, a new furnace likely would have reached the consumer no more than six months to a year after it was manufactured. R. 77 at 3, ¶ 7. Harry Alfrey II, who with his wife Helen owned the house from 1969 until the Averys purchased it in 1988, was "ninety percent sure" that the International furnace was already in the house when they bought it. R. 115, Harry Alfrey II Dep. at 17; *see also id.*, Helen Alfrey Dep. at 11–12. The Alfreys' first tenant confirmed that recollection: Max Wysong, who lived in the house from 1969 to 1971, averred that a new LP gas furnace had been installed just before he and his spouse moved into the house in the Fall of 1969. R. 125. Despite this evidence, the Averys asserted that the date of installation was uncertain. However, the district court found, and the parties do not dispute, that the

furnace was installed no later than 1975. Order at 8.

**4.** The Averys contend that we should not accept Honeywell's representations as to the meaning of the coding on the valve, because that is a matter "within the peculiar knowledge of Honeywell." Avery Br. at 10. We agree that when evidence bearing on a particular matter lies within the exclusive possession of the party seeking summary judgment, a court must be circumspect in evaluating the movant's factual averments, particularly when that party bears the burden of proof. *Reserve Supply Corp. v. Owens–Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir.1992). But it is the Averys who must prove that their cause of action falls within the period of repose. *See supra.* Moreover, although information concerning the significance of the valve coding may be within Honeywell's control, the Averys have made no showing that this information was inaccessible to them in discovery. On the contrary, at oral argument, the Averys' counsel conceded that he had obtained everything from Honeywell that he had asked for. Nor does the meaning of the valve coding strike us as a subject that is inherently difficult to probe in discovery, like one's state of mind. Thus, absent at least some evidence calling into question the accuracy of Honeywell's representations on this subject, we

was as old as the furnace, which, as we have already noted, was manufactured in 1969 and installed in the Averys' home by 1975, if not earlier. The Averys presented some evidence that it was common practice for furnace manufacturers like International to purchase large numbers of valves coded as original equipment and provide them to suppliers and repair companies for use as replacement parts. R. 115, Buezis Dep. at 45, 136–37. They also produced evidence that unused valves were still in circulation when Honeywell began the recall in 1980, raising the possibility that such valves were still being used as replacements. R. 115, Lakey Dep. at 69–70. Yet, the Averys did not identify any evidence that would permit a reasonable factfinder to determine that the valve in their furnace had, in fact, been replaced at all, let alone within the ten-year period preceding the explosion.

The Averys had resided in their home for only a short time prior to the explosion, and had had no work done on the furnace themselves. Harry and Helen Alfrey were the prior owners, and they had purchased the house in 1969. Although the Alfreys were not *certain* that the International furnace was installed in the house prior to their purchase (*see* R. 115, Harry Alfrey II Dep. at 17, Helen Alfrey Dep. at 11–12), they averred unequivocally that the furnace was neither installed nor replaced any later than 1975 (R. 78, 79). Moreover, according to the Alfreys, any repairs on the furnace would have been performed either by Becker & Sons Plumbing, Heating & Electric ("Becker & Sons") or by Biddle Plumbing & Heating ("Biddle Plumbing"). R. 78 ¶ 7, R. 79 ¶ 7. John Grawcock, an engineer at Becker & Sons, said that his review of the company's records from 1975 forward confirmed that Becker had not repaired, replaced, or modified the Alfreys' furnace (R. 75); and John Pearsall, a Becker & Sons employee who had made periodic service calls at the house, confirmed that he had never performed any work on the furnace (R. 74). Norman Biddle, the owner of Biddle Plumbing (which had installed heating ducts on an addition to the house in the 1970s) likewise represented that his company

had performed no work on the furnace. R. 76.

The Averys point out that the Alfreys themselves never lived in the house, and that their tenants occasionally made independent arrangements for repairs to the appliances. Indeed, Mapco submitted affidavits establishing that in 1986, Thermo Gas had installed a new water heater in the residence as well as a new gas line for a clothes dryer, each time billing the tenant rather than the Alfreys. R. 107, 108, 109; *see also* R. 115, Harry Alfrey II Dep. at 16–24; Helen Alfrey Dep. at 9–11. Yet, none of the tenants could recall the furnace or the valve being repaired or replaced during their tenancies. R. 123, 124, 125, 127; *see also* R. 126.

The Averys can thus do no more than speculate that the valve in their furnace on the date of the explosion was not the original, and that it may have been replaced at some point within the ten years prior to the explosion. This is not enough to avoid summary judgment. A factfinder could reasonably conclude that the valve was installed within the period of repose only if there were some evidence to support that determination, and here there is none. Although the Averys contend that "there is no evidence at all as to when and under what circumstances the valve was installed on the furnace" (Avery Br. at 18), Honeywell has produced ample evidence indicating that the valve was *not* installed after 1975, the latest date by which the furnace itself was installed. It may be that someone's memory or record keeping is flawed—perhaps one of the Alfreys' tenants did have work done on the furnace and perhaps that work involved replacement of the valve. But Honeywell is not required to negate each and every possibility that might enable the Averys to avoid the statute of repose. *Schamel v. Textron–Lycoming*, 1 F.3d 655, 657–58 (7th Cir.1993); *see also Hefti*, 8 F.3d at 1171. However theoretically possible it might be that the valve was installed later than Honeywell's evidence indicates, the Averys must flesh out their theory

accept them as true for summary judgment purposes.

with evidence; speculation will not do. *Scha-mel,* 1 F.3d at 657–58.[5]

## B. Negligent Recall

■ Apart from the alleged defect in the valve itself, the Averys also complain of Honeywell's failure to conduct a more effective recall campaign. Mapco makes comparable allegations in its cross-claim. Although they cite no cases which recognize a "negligent recall" claim, the Averys and Mapco argue that such a claim is independent of the products liability claims because it is based on a voluntary undertaking that significantly post-dates the manufacture of the product. Consequently, in their view, even if the products liability claims do not survive the statute of repose, the negligent recall claim does. We agree with the district court, however, that the negligent recall claim as it has been framed here merges with the underlying products liability claims and is thus barred by the statute of repose. *See* Order at 14.

In *Dague,* the Indiana Supreme Court rejected the plaintiff's effort to carve out an exception to the statute of repose for claims based on the defendant's failure to warn of the latent dangers in its product.

[A]n action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action based on a theory of negligence and, ultimately, is one in which the claim is made that the damage was caused by or *resulted from* the manufacture, construction or design of the product. *See*

Ind.Code § 33–1–1.5–2.... The Product Liability Act expressly applies to all product liability actions sounding in tort, including those based upon the theory of negligence, and the legislature clearly intended that *no* cause of action would exist on any such product liability theory after ten years. It is not our office to question the wisdom of the legislature's enactments....

418 N.E.2d at 212 (emphasis in original). *See also Black v. Henry Pratt Co.,* 778 F.2d 1278, 1282–84 (7th Cir.1985); *DeHoyos v. John Mohr & Sons,* 629 F.Supp. 69, 79–80 (N.D.Ind.1984).

■ In an evident attempt to circumvent *Dague,* the Averys suggest that their negligent recall claim springs not from the general duty to warn that Dague relied on, but from Honeywell's independent duty, once it had voluntarily initiated the valve recall, to conduct that effort in a reasonable fashion. At bottom, however, we perceive the negligent recall claim to be nothing more than a re-named failure to warn claim. The Averys liken their claim to one against a "good samaritan" who, although not bound to act in the first instance, is subject to a duty of reasonable care once she voluntarily undertakes to aid another and is thus liable for her negligence. Avery Br. at 25–27; *see generally Gust K. Newberg Constr. Co. v. E.H. Crump & Co.,* 818 F.2d 1363, 1367 (7th Cir. 1987). Yet, the Averys were not harmed by Honeywell's affirmative act—Honeywell did not, for example, replace the valve improper-

---

**5.** The Averys as well as Mapco have argued that the Indiana statute of repose violates sections 12 and 23 of the Indiana constitution as well as the Equal Protection Clause of the Fourteenth Amendment to the United States constitution. The Indiana Supreme Court and this court have already rejected the same arguments. *See Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 218 n. 1 (7th Cir.1986) (collecting cases); *see also Bowman v. Niagara Mach. & Tool Works, Inc.,* 832 F.2d 1052, 1054–55 (7th Cir.1987); *Orr v. Turco Mfg. Co.,* 484 N.E.2d 1300, 1302–03 (Ind.App. 1985). *Cf. Douglas v. Hugh A. Stallings, M.D., Inc.,* 870 F.2d 1242 (7th Cir.1989) (upholding Indiana Medical Malpractice Act's statute of limitations against equal protection and due process challenges). We are dismayed to note that neither the Averys nor Mapco have made any effort to acknowledge, let alone distinguish the bulk of

these precedents in their appellate briefs. It is true, as the Averys and Mapco point out, that the Indiana Supreme Court has concluded that injuries attributed to intrauterine devices and asbestos are not subject to the statute of repose. *Covalt v. Carey Canada Inc.,* 543 N.E.2d 382 (Ind. 1989); *see also Barnes v. A.H. Robins Co.,* 476 N.E.2d 84 (Ind.1985); Ind.Code § 33–1–1.5–5.5 (Supp.1992). However, the court's opinion in *Covalt* makes quite clear that this exception is limited to cases involving a latent disease contracted as a result of prolonged exposure to an inherently dangerous foreign substance (*id.* at 384, 385); and we believe that the significant distinctions the court acknowledged between that scenario and a one-time occurrence resulting in immediate injury (*id.* at 386–87) suffice to allay any equal protection concerns that arguably might be implicated by the exception.

ly. In fact, Honeywell, did nothing at all with respect to the Averys' furnace, and in that sense they were no better nor worse off than if there had been no recall program at all—their injury resulted from Honeywell's failure to warn them about the dangers of the valve, nothing else. Mapco's own briefing makes that point clear. Mapco argues:

[A]s a corporation, Honeywell possessed the means of disseminating the news to adequately warn consumers of the danger and chose not to. More specifically, Honeywell circumvented its own public relations department by not informing this department of the explosions which had already occurred by the time the recall program was begun. There were, by Honeywell's own admission in its answers to interrogatories, at least 19 lawsuits which had already been filed against Honeywell as a result of the alleged failure of the V8139 valve. (See Defendant Honeywell's answer to Plaintiff's interrogatory No. 12; App. 65). Roger Hammer was a manager in Honeywell's public relations department at the time the recall program was begun in April of 1980. In his affidavit, Mr. Hammer states that when he was first approached concerning the publicity for the recall program, he asked Mr. Joseph Sterk, a Honeywell executive, whether or not there had been any explosions that could be contributed [sic] to the valve that was being recalled. Mr. Hammer was told that there were no explosions. He also believed that since Honeywell was undertaking a program to inform the public of this valve that a widespread media campaign should be undertaken in order that the public could be better informed. (App. 93). However, such a campaign was never instituted and the media coverage was of a very limited nature. With adequate personnel already on the payroll to get the word out concerning the dangers of this valve, Honeywell chose to

do the least it could and still argue that it had "voluntarily" recalled this product.

Mapco Br. at 13. Insofar as the "negligent recall" claim is based on Honeywell's failure to "get the word out," as Mapco puts it, we believe it barred by the Indiana Supreme Court's opinion in *Dague*.[6]

■ Mapco's brief does cite certain shortcomings in the recall effort that might be construed as something other than a mere failure to warn. For example, Mapco asserts that the limited recall information Honeywell provided to consumers made it difficult even for experienced service representatives to identify exactly which valve required replacement, and that Honeywell failed to perform adequate followup to ensure that defective valves were being replaced. Mapco Br. at 13–14. Yet, even if we were to assume that these types of allegations might support a claim independent of the tort claims barred by the statute of repose (*see Schamel, supra,* 1 F.3d at 656–57), there is no evidence that any flaws in the recall campaign beyond the failure to warn were the proximate cause of injury to the Averys. *Cf. Todd v. Societe Bic, S.A.,* 9 F.3d 1216, 1219 (7th Cir.1993) (asserted shortcomings in product warnings immaterial, where evidence did not support a finding that such shortcomings were a cause of injury to the plaintiffs). Insofar as the record reveals to us, neither the Averys nor the Alfreys (or their tenants) ever received any recall information at all.

### C. Contribution and Indemnification

■ Finally, we discern no viable legal basis for Mapco's cross-claim for contribution and indemnification against Honeywell. Indiana law generally does not permit contribution or indemnity among joint tort feasors unless they have either implicitly or expressly contracted for it. *Consolidated Rail Corp. v. Allied Corp.,* 882 F.2d 254, 258 (7th Cir. 1989); *Elcona Homes Corp. v. McMillian Bloedell, Ltd.,* 475 N.E.2d 713, 715 (Ind.App.

---

6. Mapco also contends that Honeywell's failure to apprise the Consumer Products Safety Commission of the purported defects in the valve constituted fraud and deceit actionable under the Consumer Product Safety Act, 15 U.S.C. § 2072. However, we have previously held that no private right of action is available under this act for violation of the Commission's reporting requirements. *Zepik v. Tidewater Midwest, Inc.,* 856

F.2d 936, 939–44 (7th Cir.1988). *See also In re All Terrain Vehicle Litigation,* 979 F.2d 755, 757 (9th Cir.1992) (per curiam) (collecting cases); *Kloepfer v. Honda Motor Co.,* 898 F.2d 1452, 1457 (10th Cir.1990). Again we note, to our consternation, that Mapco has not so much as cited our opinion in its appellate briefs, let alone tried to distinguish it.

1985). As Mapco points out, Indiana recognizes an exception to the rule for a principal-agent relationship. *Sears, Roebuck & Co., supra,* 562 N.E.2d at 461. But even if, as Mapco contends, there is evidence in the record sufficient for the factfinder to conclude that Mapco was Honeywell's agent for purposes of the valve recall, it is of no help to Mapco here. Any liability for which Mapco might seek contribution or indemnity does not arise from its involvement in the recall— the Averys have asserted a negligent recall claim only against Honeywell, not Mapco; and in any event, we have already concluded that the negligent recall claim merges with the underlying tort theories and consequently is barred by the statute of repose. Mapco's liability rests solely on its alleged negligence in delivering gas to the Averys' home and investigating their complaints about a gas odor.[7] Mapco was not Honeywell's agent in *this* respect.

### III. CONCLUSION

We affirm the district court's entry of summary judgment in favor of Honeywell.

AFFIRMED.

---

**7.** The Averys have alleged that as a result of prior installation and repair work that Thermo Gas had performed on the gas delivery system in their home, Mapco knew or should have known that the furnace was equipped with a defective valve. R. 2 at 11–12, ¶ 48. However, that allegation was made in support of the Averys' claim that Mapco was negligent in its role as their gas supplier, not in support of any claim against Mapco as Honeywell's agent in the recall campaign. *See id.* at 12–13, ¶ 53.