Insurance Co., Owens Corning Corp., Owens–Illinois, Inc., PSI Energy, Inc., Rapid–American Corp., T & N, PLC., States Mineral Products Co., United States Gypsum Co., Appellees–Defendants.

No. 49A02–0006–CV–390.

Court of Appeals of Indiana.

May 29, 2001.

Ramona and Lee STEGEMOLLER, Appellants–Plaintiffs,

v.

ACANDS, INC., A.P. Green Ind., Inc., Amchem Products, Inc., Armstrong World Ind., Inc., Asbestos Corp. Ltd., Atlas Turner, Inc., Bell Asbestos Mines, Ltd., BMW Constructors, Inc., Certainteed Corp., Chrysler Corp., Combustion Engineering, Inc., Cummins Engine Co., Inc., D.B. Riley, Inc., Eli Lilly & Co., Fargo Insulation Co., Fiberboard, Flintkote Co., Ford Motor Co., Foster Wheeler Corp., GAF Corp., General Electric Co., General Motors Corp., Indianapolis Power & Light Co., Indpoco, Inc., Metropolitan Life

Linda George, W. Russell Sipes, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorneys for Appellants.

Michael A. Bergin, Julia Blackwell Gelinas, Daniel M. Long, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Ramona and Lee Stegemoller (collectively, the Stegemollers), appeal the dismissal of their complaint against the appellees-defendants, AcandS, Inc, *et al.*, (collectively, the appellees). Specifically, the Stegemollers contend that the trial court erred in granting the motion to dismiss because their cause of action was properly brought under the Indiana Product Liability Act[1] (IPLA). Alternatively, the Stegemollers contend that they are entitled to pursue a separate common law negligence claim against the appellees if their cause of action does not fall within the purview of the IPLA.

## FACTS

Lee was employed as a union insulator beginning in 1947, and has worked for a number of different companies. During

---

1. IND. CODE § 34–20–1–1 to 9–1.

the course of his career, Lee worked with asbestos and some of the dust remained on his clothing after leaving the jobsite. Lee primarily used the asbestos insulation in industrial settings. The insulation materials were used on industrial boilers, engines, furnaces and turbines. Record at 29. As a result of her contact with the asbestos materials, Lee's wife, Ramona, was diagnosed with colon cancer, pulmonary fibrosis and pleural thickening in April, 1998.

On March 5, 1999, the Stegemollers filed a complaint against the thirty-four appellees, alleging that Ramona had ingested or inhaled the asbestos fibers that caused her diseases. The complaint alleged that Ramona had been exposed to asbestos dust on a daily basis from approximately 1947 until 1988, as the result of interacting with Lee and laundering his work uniforms. The Stegemollers contended that the asbestos material originated from products attributable to the appellees, or from the premises of other defendants. The Stegemollers cause of action also alleged that the appellees participated in a conspiracy to conceal the known hazards of asbestos from the public.

On May 12, 1999, several of the appellees filed a motion to dismiss the Stegemollers complaint. The motion asserted that Ramona was not a "user or consumer" as defined by the IPLA. Thus, they contended that Ramona had no cause of action for her asbestos-related diseases. The trial court ultimately granted the appellees' motion to dismiss, reasoning that the Stegemollers' claims did not fall within the purview of the IPLA, and further determined that there could be no common law negligence claim because the IPLA exclusively governs the actions brought by the user of a product against a seller or manufacturer. The Stegemollers now appeal the trial court's grant of the motion to dismiss.

## DISCUSSION AND DECISION
### I.   Action Under the IPLA

The Stegemollers first contend that the trial court erred in dismissing their cause of action under the IPLA. Specifically, they claim that their cause of action fell within the purview of that statute because Ramona qualified as a "user" or "consumer" of the asbestos product, and she fit the definition of a "bystander" as defined in the IPLA.

To resolve this issue, we first turn to the relevant provisions of IND. CODE § 34–6–2–29, the consumer definition of the IPLA:

"Consumer" ... means:

(1) a purchaser;

(2) any individual who uses or consumes the product;

(3) any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question; or

(4) any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use.

When interpreting the above provisions, we note that the determination as to whether Ramona qualifies as a "consumer" under the IPLA, is purely a legal question. *See Estate of Shebel v. Yaskawa Elec. Am.,* 713 N.E.2d 275, 279 (Ind.1999). Further, when a statute is unambiguous, courts must apply the words of that statute in their plain and ordinary sense. *Hughey v. Review Bd.,* 639 N.E.2d 1044, 1047 (Ind.Ct.App.1994), *trans. denied.* The courts have no authority to revise or amend the statute according to what the parties argue that the legislature must have intended when a statute is unambiguous. *Id.*

Here, Ramona has made no showing that she used, consumed, possessed or controlled any of the asbestos insulation products that Lee worked with in accordance with I.C. § 34–6–2–29(1)–(3), quoted above. Thus, the only claim that the Stegemollers are left with under the ILPA is the contention that Ramona may be compensated for her injuries as a "bystander" in accordance with I.C. § 34–6–2–29(4).

The Stegemollers made no allegation that Ramona was ever present at any of the sites where Lee came into contact with the defendants' products. Additionally, she was not in the vicinity when the asbestos products were being used. In fact, the Stegemollers stipulated that Ramona's exposure did not occur where Lee allegedly used asbestos-containing insulation materials. *Stipulation of Fact* at 1. Rather, as noted above, Ramona's only alleged exposure to asbestos material was to the dust that Lee brought home from his workplace.

When considering the statutory provisions set forth above, the plain language of the IPLA requires Ramona to have been a person who would "reasonably be expected to be in the vicinity of the product during its reasonably expected use" in an industrial setting, in order to recover as a bystander. Here, the circumstances involving Ramona's alleged exposure to the asbestos dust do not satisfy the "during its reasonably expected use" portion of the IPLA. Specifically, the statute contemplates that she must have been present at the places and at the times when Lee used the asbestos products. Inasmuch as the Stegemollers have stipulated that Ramona was not present at those times and places, she does not meet the definition of a "bystander" within the meaning of the IPLA.

We also reject the Stegemollers' claim that Ramona may recover because the appellees should have reasonably foreseen that Ramona would be in the vicinity of the asbestos-containing products during their expected use in an industrial setting. The IPLA is only susceptible to the reading given by the plain and common meaning of the language found within it. Ramona cannot meet the requirement that she was an individual who would have reasonably been expected to be in the vicinity of asbestos-containing insulation material meant for industrial purposes during the reasonably expected use of the product. Simply put, the Stegemollers' argument, that Ramona may recover because the appellees should have reasonably foreseen that Lee would bring asbestos dust home on his clothing, ignores the plain language of the IPLA. As a result, the trial court properly granted the appellees' motion to dismiss.

## II.   *Separate Claim of Negligence*

■   The Stegemollers present an alternative argument that Ramona should be entitled to maintain a separate claim under the common law of negligence, even though she may not qualify as a user, consumer or bystander within the meaning of the IPLA. Specifically, the Stegemollers argue that their complaint stated an independent claim under this theory and, therefore, the order dismissing their action was improper.

In resolving this contention, we note that I.C. § 34–20–1–1 of the IPLA governs all actions brought to recover for personal injury caused by a product regardless of the substantive legal theory. A companion statute, IND. CODE § 34–6–2–115, provides that " 'Product liability action', for purposes of Ind.Code 34–20, means an action that is brought: (1) against a manufacturer or seller of a product; and (2) for or on account of physical harm; regardless of the substantive legal theory or theories upon which the action is brought." Our supreme court noted in *Dague v. Piper*

*Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 212 (1981), that "it seems clear the Legislature intended that the act govern *all* product liability actions whether the theory of liability is negligence or strict liability in tort.... The Product Liability Act expressly applies to all product liability actions sounding in tort, including those based upon the theory of negligence." (emphasis in original). Additionally, in *Interstate Cold Storage Inc. v. General Motors Corp.*, 720 N.E.2d 727, 730 (Ind.Ct.App. 1999), *trans. denied,* we determined that the IPLA governed all actions brought against a manufacturer or seller of that product for physical harm caused by the product.

In *Interstate Cold Storage*, the plaintiff, who owned a truck that was totally destroyed when it caught fire, instituted a cause of action against the vehicle's manufacturer, asserting claims for negligence and strict liability. *Id.* at 729. The trial court granted summary judgment in favor of the defendant, General Motors. On appeal, we affirmed the trial court's judgment, reasoning that the IPLA "governs both the strict liability and negligence claims brought by [the plaintiff]." *Id.* at 730. Like the circumstances presented in *Interstate Cold Storage*, the Stegemollers are not entitled to pursue a separate claim for negligence, even though they cannot succeed in an action brought under the IPLA.

## CONCLUSION

In light of our disposition of the issues set forth above, we conclude that Ramona was not a "bystander" within the meaning of the IPLA. Moreover, we note that the Stegemollers may not succeed upon their alternative argument that they could pursue a separate negligence claim against the appellees, inasmuch as the provisions of the IPLA governed their cause of action. Thus, the trial court properly granted the appellees' motions to dismiss.

Judgment affirmed.

BAILEY and MATHIAS, JJ., concur.