**INDIANA STATE FAIR BOARD, Estel Callahan as Secretary-Manager, Indiana State Fair Board, Appellant,**

v.

**The HOCKEY CORPORATION OF AMERICA, Appellee.**

**The Winter Club of Indianapolis, Inc., Amicus Curiae.**

No. 182S12.

Supreme Court of Indiana.

Jan. 13, 1982.

Linley E. Pearson, Atty. Gen., J. Gordon Gibbs, Jr., Deputy Atty. Gen., Indianapolis, for appellant.

Dean E. Richards, Indianapolis, for The Hockey Corp. of America.

William M. Osborn, Osborn & Hiner, Indianapolis, for The Winter Club of Indianapolis, Inc.

ON PETITION TO TRANSFER

PER CURIAM.

This cause comes to us on a petition to transfer from the Indiana Court of Appeals. Following a bench trial, the Marion County Superior Court granted the injunctive relief

requested by appellee, Hockey Corporation of America (Hockey), against the appellant, Indiana State Fair Board (Fair Board), and also awarded monetary damages to Hockey. The Court of Appeals, Second District, opinion by Sullivan, P. J., Buchanan and White, JJ., concurring, affirmed the trial court ruling of injunctive relief but reversed the damages award and the finding that there was a taking from the competitor in violation of the due process clause. *Indiana State Fair Board v. Hockey Corp. of America*, (1975) 165 Ind.App. 544, 333 N.E.2d 104.

■ The question presented for our review is whether the Court of Appeals failed to properly interpret sections of the Indiana State Fair Board Act which appellant believes give it authority to directly operate a public skating facility and a retail sales and skate rental shop within the Indiana State Fairgrounds' Coliseum. Appellant's petition to transfer is granted and the opinion of the Court of Appeals is vacated. It should be noted that the appellee, Hockey, also wanted this case transferred to this Court but failed to file a petition for rehearing in the Court of Appeals; therefore, under Ind.R.App.P. 11(B), Hockey's petition to transfer is denied.

The record demonstrates that the Fair Board is denominated as "the sole agency of the state of Indiana to administer said trust property [the State Fairgrounds] for and on behalf of the state of Indiana." Ind.Code § 15–1–1–1 (Burns 1973). Since 1964, the Fair Board has operated a public ice skating rink and a retail and rental skate shop at the Coliseum, located on the fairgrounds. All revenues from these operations are placed in the Fair Board account for maintenance and improvement of the Fairgrounds.

Hockey was incorporated in 1969 and was chartered under state law to operate ice skating rinks in the Indianapolis area. It operates two ice skating rinks and according to its financial records, Hockey has shown annual net profits from these activities. In 1973, Hockey filed a suit claiming that the activities of the Fair Board in operating the skating rink and retail shop

exceed the powers conferred by the General Assembly, and that such activities are *ultra vires*. In addition, the complaint stated that the Fair Board's operations in question here deprived Hockey of its due process rights under the Fourteenth Amendment because such activities constituted "unfair competition" by the Fair Board, which, because of its tax exempt status, was able to conduct the skating rink and retail shop in a manner unfair to private corporations involved in similar activities. Hockey also sought damages for being directly injured by the Board's activities. After hearing the above evidence, the trial court ruled that the Fair Board was unfairly competing with Hockey, and was operating outside the scope of the Indiana State Fair Board Act, Ind.Code §§ 15–1–1–1 to –27 (Burns 1973). Fair Board was enjoined from operating a skating rink and retail skate shop in the Coliseum and ordered to take competitive bids for operation of those activities. The trial court also awarded damages to Hockey in the amount of $19,350.00.

In rendering judgment, Fair Board was ordered to take competitive bids on the operation of the rink and shop, and, if no bids were received, the Fair Board, upon authority of the court, could then conduct the rink and shop activities. The trial court held that the State Fair Board Act allowed Fair Board to conduct activities only in furtherance of agriculture; thus, the trial court reasoned that operating the skating rink and retail shop was not in furtherance of agriculture and therefore the activities of Fair Board were *ultra vires*. The Court of Appeals agreed with the finding of the trial court. Fair Board believes that its conduct was within the discretionary powers permitted by the Act and that the Court of Appeals erred in not properly interpreting the sections of the Indiana State Fair Board Act.

This Court stated recently in *Dague v. Piper Aircraft Corp.*, (1981) Ind., 418 N.E.2d 207:

"In construing an Indiana statute, our duty is to ascertain and give effect to the intent of the legislature. In doing so, we

must give meaning to the language used, where that meaning is clear and unambiguous. Where the meaning of the statute is ambiguous, however, or where one or more constructions are apparently possible, we must construe the statute so as to arrive at the apparent intention of the legislature which is consistently revealed in all sections of the act, and consistent with all other statutes passed by the legislature. *See, e.g., Loza v. State,* (1975) 263 Ind. 124, 128–29, 325 N.E.2d 173, 176; *State ex rel. Bynum v. LaPorte Superior Court,* (1973) 259 Ind. 647, 650, 291 N.E.2d 355, 356; *Thompson v. Thompson,* (1972) 259 Ind. 266, 273, 286 N.E.2d 657, 661; *Allen County Dep't of Public Welfare v. Ball Memorial Hosp. Ass'n,* (1969) 253 Ind. 179, 184–85, 252 N.E.2d 424, 427; *State v. Gilbert,* (1966) 247 Ind. 544, 550, 219 N.E.2d 892, 895."

*Id.* 418 N.E.2d at 210.

Ind.Code § 15–1–1–7 lists the powers of the Fair Board and provides:

15–1–1–7 [15–221]. Powers of board: To hold fairs—Receive contributions—Control of grounds and buildings—Collection of rentals and fees—Restrictions on use of grounds and buildings—Enlargement of the scope of activities.—The Indiana State Fair Board shall have power to hold state fairs at such times and places as it may deem proper and expedient and have the entire control of the same, fixing the amounts of various premiums offered embracing the various products of farm, field, garden, animal husbandry, or other industries relating to agriculture, including any article of science and art as it may deem expedient and proper. Said board is authorized to receive contributions and donations which may be made for the furtherance of its purposes. Said board shall also have complete control of said state fair grounds, the buildings and other equipment thereon and all property and property rights held for furtherance of its purposes, and it is authorized to purchase, exchange and sell such other real property, equipment, and material, proceeds from which shall be deposited in the accounts of the state fair board, and erect such other buildings or make improvements thereof, as may by it be deemed necessary to the proper control of the exhibitions held under its direction and to rent buildings or space therein, or space on said grounds for exhibitions during fairs and for such other purposes at other times as the board may determine; to fix and collect rentals for the same, to fix and collect entrance fees, admission fees, and privilege fees, as may be deemed just and proper: Provided, however, That the board shall not permit any use of the grounds or buildings in a manner prohibited by the laws of the State of Indiana; nor shall any obscene shows, fakirs, fortune tellers, or games of chance be allowed on the grounds. The board shall have power to enlarge the scope and field of its activities from time to time as it may deem to the advantage of agriculture, including district fairs, and its kindred pursuits: Provided further, That the sale, exchange, or purchase of real property shall be made only after approval of the same by the governor; and Provided further, That the authority granted herein to exchange and sell real property shall not apply to that property or any part thereof, known as the Indiana State Fairgrounds, upon which the Indiana state fair is held, which was conveyed by the Indiana state board of agriculture to the State of Indiana by warranty deed executed and delivered to the governor of said State on May 31, 1921. [Acts 1947, ch. 214, § 6, p. 769; 1969, ch. 269, § 5, p. 1096.]

There are only two express prohibitions in the above section: "That the board shall not permit any use of the grounds or building in a manner prohibited by the laws of the State of Indiana; nor shall any obscene shows, fakirs, fortune tellers, or games of chance be allowed on the grounds" and that the power to sell real estate "shall not apply to that property or any part thereof, known as the Indiana State Fairgrounds...." In all other respects the Fair Board is given complete control of the fairgrounds, the buildings and other equipment thereon and

all property and property rights for furtherance of its purposes. Section 15–1–1–7 grants broad powers to its Board to use the state property in almost any lawful use, so long as all proceeds are deposited in the accounts of the State Fair Board. Fair Board may hold exhibitions "under its direction" both "during fairs and for such other purposes at other times as the board may determine." It is also given the power to "enlarge the scope and field of its activities from time to time as it may deem to the advantage of agriculture...."

Fair Board urges that under Section 15–1–1–22 (charging Fair Board that revenues it obtains should be at least sufficient to pay the cost of the operation of the state fair and the operation, maintenance and repair of the state fairgrounds), the legislature authorized the operation of profitable commercial ventures for the support and maintenance of the fairgrounds. All of the above arguments were placed before the Court of Appeals but that court held that the Fair Board's direct operation of the skating rink and shop is outside the scope of the State Fair Board Act because Section 15–1–1–12 provides: "... it being the legislative intent that said property be held by the state as trustee for the interest of agriculture and allied industries...." *Indiana State Fair Board, supra*, 333 N.E.2d at 113.

 We hold that the direct operation of the skating rink is not an *ultra vires* act. The fairgrounds are held by Fair Board for the interest of agriculture but revenues must be obtained in order to maintain the buildings and hold the state fair. The legislature gave broad powers to the Fair Board to conduct activities which will benefit the Indiana State Fairgrounds and thereby directly benefit agriculture and its allied industries. Many sporting events, primarily races, such as the Hoosier Hundred, motorcycle races, and sprint and midget auto races, have been held on the fairgrounds. These events were not related to agriculture but the proceeds from such were deposited in the accounts of the State Fair Board. The broad scope of powers was given to the Fair Board so it could constantly review its activities to the advantage of agriculture.

This Court is of the opinion that the activities of which Hockey complains are clearly within the Fair Board's statutory authority; Fair Board's activities in directly operating the skating rink and rental shop were not *ultra vires.*

Four other questions need to be discussed here that were not raised in the petition to transfer. We agree with the Court of Appeals' disposition of the other issues raised on the appellate level: that the Fair Board is an agency of the State of Indiana; that the Court of Appeals correctly reversed the damages award because Fair Board was not engaged in unfair competition with Hockey; that Fair Board's motion for change of venue was waived by inaction; and, that error, if any, in granting and continuing a temporary restraining order against Fair Board is harmless. *Indiana State Fair Board, supra*, 333 N.E.2d at 107–11, 113–15.

Petition for Transfer of appellant Indiana State Fair Board is granted, and the opinion of the Court of Appeals in this case is vacated. This case is ordered remanded to the trial court with orders to set aside its judgment and to enter judgment consistent with this opinion.

PRENTICE, J., dissents.