Frank SCOTT, Don Miller, and Mary L. Riffey–Perkins, as Taxpayers and Residents of the Consolidated City of Indianapolis, Appellants–Plaintiffs,

v.

The CONSOLIDATED CITY OF INDIANAPOLIS, Marion County, Indiana (an Indiana Municipal Corporation) and the Department of Waterworks of the Consolidated City of Indianapolis, Marion County, Indiana, Appellees–Defendants.

No. 49A02–0411–CV–954.

Court of Appeals of Indiana.

Sept. 13, 2005.

Wife failed to support the latter contention by meaningful argument.

John R. Price, John R. Price & Associates, Indianapolis, for Appellants.

Michael C. Terrell, Donald C. Biggs, Gayle A. Reindl, Sommer Barnard Attorneys, PC, Indianapolis, for Appellees.

## OPINION

SULLIVAN, Judge.

Frank Scott, Don Miller, and Mary L. Riffey–Perkins (collectively "Scott") appeal from the trial court's denial of their motion to change venue from Marion County. They present two issues for our review: (1) whether the trial court could revisit a previously granted order for change of venue, and (2) whether Trial Rule 76 required the change of venue from Marion County.[1]

We affirm.

In 2002, the City of Indianapolis ("City") purchased the Indianapolis Water Compa-

---

1. The trial court eventually granted summary judgment in favor of the City of Indianapolis and the Department of Waterworks. Scott does not appeal that decision.

ny ("IWC") and created the Department of Waterworks ("DOW")[2] to oversee the management of the IWC. Scott filed a complaint against the Defendants alleging that the City had failed to follow statutory requirements in the purchase and operation of the IWC. The complaint was filed on April 24, 2003 at approximately 3:30 p.m. and the case was assigned to Judge Reid. At that same time, Scott's counsel, John R. Price, presented a "Verified Motion for Change of Venue from County" and the proposed order to the filing clerk. Because Judge Reid was at a judicial conference, Mr. Price proceeded to look for an available judge to grant the change of venue so that the complaint and the change of venue order could be served at the same time. Judge Kenneth H. Johnson was available and signed the order during a break in a trial.

Upon learning of the lawsuit and the change of venue motion, the Defendants' counsel objected to the granting of the motion and refused to agree to a county for a change of venue. On April 28, the Defendants filed a motion to vacate the order granting the change of venue. As the grounds for vacation of the order, they asserted that Marion Circuit and Superior Court Civil Division Rules provide that they have fifteen days to respond to the motion.[3] Additionally, they claimed that the change of venue from the county, under Trial Rule 76(A), is not automatic. Scott filed a response to the motion to vacate the order, alleging that Marion County was a party in this case because of the effects of Unigov, and that indeed, it is mandatory that a motion for change of venue be granted when the county is involved in a lawsuit. That response was filed on May 1.

Also on May 1, the trial court—Judge Reid—granted the motion to vacate the order for change of venue because the order was entered prior to the Defendants having an opportunity to respond as provided for in the local rules. A hearing was held on May 15, 2003 upon whether venue should be transferred to a different county. Following that hearing, on May 28, Judge Reid issued an order denying Scott's motion for change of venue. The court determined that Marion County was not a nominal party to the action, nor are the City and Marion County one and the same.

■ The first issue presented by Scott upon appeal is whether the trial court had jurisdiction to vacate an order granting a change of venue. Trial Rule 78 addresses matters of jurisdiction pending changes from a county. It states:

"Whenever a court has granted an order for a change of venue to another county and the costs thereof have been paid where an obligation exists to pay such costs for such change, either party to the cause may file a certified copy of the order making such change in the court to which such change has been made, and thereupon such court shall have full jurisdiction of said cause, regardless of the fact that the transcript and papers have not yet been filed with such court to which such change is taken. Nothing in this rule shall be construed as divesting the original court of its jurisdiction to hear and determine emergency matters between the time that a motion for change of venue is filed and the time that the court grants an order for the change of venue."

---

**2.** For simplicity, we will refer to the City and the DOW jointly as the "Defendants."

**3.** Marion Circuit and Superior Court Civil Division Rule 5.1(B) states, "Unless otherwise

provided, a party shall have fifteen (15) days from the date of filing to file a response to a motion, other than a motion for continuance or enlargement of time."

Based upon this language and our case law, Scott argues that as soon as the order was granted, the trial court from which the order was granted was without jurisdiction to review the matter. Furthermore, Scott argues that Trial Rule 76[4] does not contemplate a responsive pleading and that the court lacks jurisdiction to entertain the responsive pleading. Rather, according to Scott, the moving party has the sole opportunity to prove or fail to prove that he is entitled to a change of venue.[5]

Relatively few Indiana cases have addressed whether a trial court may entertain a motion to vacate a change of venue order, or even whether the issue may be addressed sua sponte. In general terms, in *Metropolitan Development Commission of Marion County v. Newlon,* 156 Ind.App. 464, 297 N.E.2d 483 (1973), this court addressed whether previously ruled upon motions may be reconsidered. This court stated, "[a] court has inherent power to control its own orders. It is therefore perfectly proper for a trial court to reconsider a previous order, and to vacate it, or make a modified or contrary order while the case is still in fieri." 156 Ind.App. at 466, 297 N.E.2d at 484.

Scott relies upon two cases which applied the prohibition found in Trial Rule 78 of a trial court ruling upon matters other then the change of venue motion and emergency matters. In both *Justak v.*

*Bochnowski,* 181 Ind.App. 439, 391 N.E.2d 872 (1979), and *City of Fort Wayne v. Hoagland,* 168 Ind.App. 262, 342 N.E.2d 865 (1976), this court ruled that the respective trial courts erred in ruling upon motions related to default judgments after a motion for change of venue had been filed.

In *Sun Publishing Company v. Bonifas,* 106 Ind.App. 607, 19 N.E.2d 879 (1939), a change of venue motion was granted, costs were paid, and the Clerk of the Jay Circuit Court transmitted the papers to the Blackford Circuit Court, which assumed jurisdiction. A motion to vacate the order was then filed in the Jay Circuit Court and the motion was stricken by the Jay Circuit Court because it did not have jurisdiction to entertain the motion. This court held that the Jay Circuit Court did not err by striking the motion because it had no jurisdiction to set aside its order to change venue. 106 Ind.App. at 610, 19 N.E.2d at 880. The court noted that the general rule is that "a court may in its discretion either by consent of the parties or for any sufficient cause, and at the same term before the transfer is made vacate or set aside its order in regard to a change of venue and may reinstate the cause for trial. After the jurisdiction of the court is divested however it cannot vacate or set aside its order." 106 Ind.App. at 610–11, 19 N.E.2d at 880.

That same principle was followed in *Welty v. Allen Superior Court No. 2,* 243

4. Indiana Trial Rule 76(A) states:
   "In civil actions where the venue may be changed from the county, such change of venue from the county may be had only upon the filing of a verified motion specifically stating the grounds therefore by the party requesting the change. The motion shall be granted only upon a showing that the county where suit is pending is a party or that the party seeking the change will be unlikely to receive a fair trial on account of local prejudice or bias regarding a party or the claim or defense presented by a party.

   A party shall be entitled to only one change of venue from the county. Denial of a motion for change of venue from the county shall be reviewable only for an abuse of discretion. The Rules of Criminal Procedure shall govern proceedings to enforce a statute defining an infraction."

5. Taking this statement to its logical conclusion, a trial court would also be without jurisdiction to conduct a hearing upon a change of venue motion, which Judge Reid did after vacating the order.

Ind. 378, 185 N.E.2d 617 (1962). In that case, a party sought a writ of mandate directing the trial court to enter an order for change of venue. Our Supreme Court determined that the court had authority to vacate its prior order granting a change of venue because the order was based upon a motion which was not timely filed and the action of the court occurred during the same term and prior to the investment of jurisdiction of said cause in any other court.[6] 243 Ind. at 383, 185 N.E.2d at 619.

Since that time, several more cases from this court and our Supreme Court have addressed the issue of whether a trial court may set aside an order granting a change of venue. These cases all stand for the proposition that a trial court does have discretion to do just that. *See Northern Indiana Pub. Serv. Co. v. Elkhart Superior Court, Room One,* 556 N.E.2d 326 (Ind. 1990); *Smith v. Lake Superior Court,* 531 N.E.2d 213 (Ind.1988); *Indiana State Fair Bd. v. Hockey Corp. of America,* 165 Ind. App. 544, 333 N.E.2d 104 (1975) (vacated by 429 N.E.2d 1121 (Ind.1982) but agreeing with this court's disposition on grounds of waiver of right to change of venue before complete disinvesture of jurisdiction because of inaction by the Fair Board on its motion for change of venue).

In the case before us, Judge Johnson of the Marion Superior Court had granted the motion for change of venue. However, he did so within a time frame that prevented the Defendants from being able to respond to the motion. Judge Reid concluded that Marion Circuit and Superior Court Civil Division Rule 5.1(B) provided for a fifteen-day period in which the Defendants could respond to the motion. As a result, she vacated the prior order.[7] At the time she vacated the order, jurisdiction had not been vested in any other court. Therefore, under the precedent from this court and our Supreme Court, Judge Reid had the authority to review the order and vacate it.

Because Judge Reid had authority to review and vacate the order, we now turn to the heart of this appeal, whether Trial Rule 76 mandates that this cause of action be venued in a different county because Marion County is a party to this action. Trial Rule 76(A) states that a change of venue motion "shall be granted only upon a showing that the county where suit is pending is a party or that the party seeking the change will be unlikely to receive a fair trial on account of local prejudice or bias regarding a party or the claim or defense presented by a party."[8] A

---

**6.** The Court stated that a "court upon its own motion and upon its discretion may, within the term of court, reconsider its action with respect to any pleading and vacate such orders as are considered to have been erroneously made." 243 Ind. at 383, 185 N.E.2d at 619.

**7.** We are not persuaded by Scott's claim that Trial Rule 76 does not contemplate a response and that a court is without jurisdiction to consider the response. By their terms, neither Trial Rule 76 nor 78 prohibit a response; they provide only that a showing must be made for the reason necessitating the change and preclude the trial court from ruling upon any other matters, except emergency matters, in the case. Furthermore, Scott's opinion that the court must rely solely upon the filings made by the party seeking the change of venue potentially interferes with the trial court's ability to have full information and consider the facts in their totality when considering whether to order a change of venue. This is not to say that if a change of venue must be granted that a party may object and prevent it, as Scott fears may happen. Nonetheless, a response by the non-movant may properly be used to inform the court's decision.

**8.** Scott had also argued that the change of venue should have been granted because of the likelihood of bias. However, Scott has since abandoned that argument. Appellants' Reply Brief at 2.

denial of a motion for change of venue is reviewed for an abuse of discretion. T.R. 76(A).

Scott's argument is that a change of venue is automatic if the county is a party. Scott then asserts that Marion County is a party because the passage of the legislation, commonly known as Unigov, consolidating government functions of Marion County and the first class city of Indianapolis abolished Indianapolis as a city and made Indianapolis and Marion County one entity.[9]

■ Unigov was passed by the General Assembly in 1969.[10] Somewhat surprisingly, while many cases have addressed issues presented by Unigov, we have been unable to find any case which has determined to what extent the city and county governments were consolidated. Thus, we are addressing an issue of first impression. In resolving this issue, we will turn to the sole source for concluding whether the City of Indianapolis and Marion County have maintained separate identities, namely the statutes creating and implementing Unigov.

The Unigov statutes purported to reorganize local municipal and county government in counties with a first class city to enable consolidation of governmental functions in densely populated metropolitan communities. *Dortch v. Lugar*, 255 Ind. 545, 550, 266 N.E.2d 25, 30 (1971), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind.1994). This would eliminate the overlapping jurisdictions of various county and municipal boards and provide some semblance of centralized control over the metropolitan area. *Id.*

Because the interpretation of a statute is a question of law, we review the construction of statutes de novo, giving no deference to the trial court determination. *Kaser v. Barker*, 811 N.E.2d 930, 932 (Ind.Ct. App.2004), *trans. denied.* We independently review the statute's meaning and apply it to the facts of the case at hand. *Id.* We may not construe a statute in a manner which would impair the function the legislature intended it to possess. *Id.* Our goal is to ascertain the intent of the legislature by giving effect to the language that was used. *Id.*

Many of the provisions contained in the Unigov statute do lend credence to Scott's argument. First, Indiana Code § 36–3–1–4 (Burns Code Ed. Repl.2000) abolishes the first class city[11] as a separate entity when the first class city becomes a consolidated city.[12] The consolidated city is then to be known as the "City of _____,"

---

**9.** In their brief, appellants argued that the City is the "functional equivalent" of Marion County. Before the trial court and at oral argument, Scott instead focused upon the argument that the first class City of Indianapolis had been abolished. The Defendants assert that Scott was changing his argument by arguing "functional equivalent." As presented to this court, we believe that the arguments are essentially the same, only phrased differently.

**10.** The current version of the statute is found at Indiana Code 36–3. Previously, it was codified at Indiana Code 18–4.

**11.** At the time the Unigov statutes were passed, Indiana Code § 18–2–1–1 (Burns

Code Ed. Repl.1974) stated that a first class city was any city with a population over 250,-000. This has since been changed. However, two versions of the current statute, Indiana Code § 36–4–1–1 (Burns Code Ed. Supp.2004) exist. One states that a first class city has a population of 600,000 or more and the other states that the population must be 500,000 or more. The current version of the statute is irrelevant here so we need not decide which version properly defines a first class city.

**12.** Indianapolis is the only city in Indiana which has reached first class city status and, thus, is the only consolidated city.

with the name of the first class city inserted into the blank. I.C. § 36–3–1–4(b). More importantly, the mayor of the consolidated city is also the executive of the county and there is only one legislative body, the City–County Council. Ind.Code § 36–3–1–5 (Burns Code Ed. Repl.2000); Ind.Code § 36–3–4–2 (Burns Code Ed. Repl.2000). Because the mayor serves as the executive of both the city and the county, the county board of commissioners no longer serves as the executive. I.C. § 36–3–1–5. The board of commissioners does still exist, but with the county treasurer, county auditor, and county assessor as ex officio members. *Id.;* Ind.Code § 36–3–3–10 (Burns Code Ed. Repl.2000). Their duties are to make appointments required to be made by the board of commissioners, perform statutory duties pertaining to the issuance and payment of bonds, and exercise the powers granted by Article 9, Section 3 of the Indiana Constitution and by Indiana Code 12–30–3. I.C. § 36–3–3–10 As is readily apparent, these sections tend to indicate that the city and county are one entity. Nevertheless, the vast majority of the sections indicate that they retain separate identities.

The territory of the consolidated city is all of the territory which comprised the first class city and all other territory in the county except territory of an excluded city. I.C. § 36–3–1–4. An excluded city is a municipality, other than a first class city, which has a population of more than 5,000. Ind.Code § 36–3–1–7 (Burns Code Ed. Repl.2000). In Marion County, these ex-

cluded cities are Lawrence, Beech Grove, and Speedway.[13] Consequently, the City is comprised of less than the whole area of Marion County. As a result of this exclusion of certain cities and the various functions performed by different agencies of the City, many of the Unigov statute's provisions do not affect citizens of the entire county but only citizens of the consolidated city.[14] *Dortch,* 255 Ind. at 566, 266 N.E.2d at 39.

Furthermore, while the mayor serves as the executive of both the consolidated city and the county, the fact that Indiana Code § 36–3–1–5(a) states that the officers who become the executive and legislative body of the consolidated city also become the executive and legislative body of the county indicates that the General Assembly intended that the county government continue to exist outside of the city government. Were this not so, the General Assembly would have also abolished the county government and there would have been no need to name an executive and legislative body for both the city and county.

It is also important to note that all of the constitutional offices which comprise the county government were maintained.[15] This is noteworthy because Indiana Code § 36–3–6–4 (Burns Code Ed. Repl.2000) requires the preparation of budget estimates by the director of each department of the consolidated city, each township assessor, elected county officer, head of a county agency, and the county clerk. So

---

**13.** Although it does not meet the requirement of having a population in excess of 5,000, the City of Southport was apparently deemed an excluded city by Indiana Code § 18–4–1–2(d) (Burns Code Ed. Repl.1974).

**14.** A noteworthy fact is that notwithstanding I.C. § 36–3–1–4(b), the Unigov statute refers to "consolidated city" in a general sense and not as a proper name. Thus, it does not appear that the General Assembly intended

that any governmental body organized under the statute would necessarily be designated as the "Consolidated City of _____" to the exclusion of other relevant entities.

**15.** We recognize that a constitutional amendment would have been needed to eliminate these offices. However, that fact supports the conclusion that a portion of the county government was maintained separate from the city government.

while the budget estimates are eventually combined into one budget for approval by the city-county legislative body, all estimates prepared by city officers are submitted to the city fiscal officer and those prepared by county officers are submitted to the county fiscal officer. *See* Ind.Code §§ 36–3–6–4 through 36–3–6–7 (Burns Code Ed. Repl.2000).

With respect to the financing of the city and county, a tax levied by the consolidated city for a department or division having jurisdiction over the whole county shall be levied on property in the whole county and deposited into a fund known as the consolidated county fund. I.C. § 36–3–6–7. A tax levied by the consolidated city for a department or division having territorial jurisdiction only inside the corporate boundaries of the consolidated city shall be levied solely on property within the consolidated city. *Id.* A tax to be levied by the *county or the consolidated city* for various other functions shall be levied upon only the territorial jurisdiction affected. *Id.* The presence of measures to collect and deposit funds from the various geographical areas also supports the conclusion that the City and Marion County have retained separate identities.

That the General Assembly intended that both city and county governments survive the consolidation provided in the Unigov statutes is also demonstrated by

Indiana Code § 36–3–7–1 (Burns Code Ed. Repl.2000), a chapter dealing with "each consolidated city and its county." It states that Indiana Code 36–4–8 applies to the consolidated city whereas Indiana Code 36–2–6 applies to the county.[16]

As noted by our Supreme Court in *Dortch*, the goal of the Unigov statute was to eliminate overlapping jurisdictions of the various county and municipal boards and departments. 255 Ind. at 550, 266 N.E.2d at 30. And although the City and Marion County governments are predominately controlled by the same individuals, not all functions of the City and Marion County were consolidated. As demonstrated, the General Assembly provided for the continued existence of some government functions by the county such that the Marion County government is separate from the City.[17] According to the plain reading of Trial Rule 76, a change of venue occurs when the county is a party to the action. Here, the IWC was purchased by the City, not Marion County. Thus, the trial court did not abuse its discretion in denying the change of venue.

The denial of the motion for change of venue is affirmed.

NAJAM, J., and RILEY, J., concur.

---

**16.** Those chapters address matters of administration for cities and counties, respectively.

**17.** We note parenthetically that in addition to the dramatic examples of the continued separate existence of the City and Marion County, government functions such as the Indianapolis Police Department and the Marion County Sheriff's Department, as well as the Indianap-

olis Fire Department and the surrounding township fire departments, were maintained separately in Unigov. That those departments were not consolidated in Unigov also lends support to the conclusion that the City and Marion County were not completely consolidated such that they became one entity.