Jeffery S. CURTIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–1002–CR–110.

Court of Appeals of Indiana.

Nov. 19, 2010.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a bench trial, Jeffery S. Curtis was convicted of Operating While Intoxicated (OWI),[1] a class C misdemeanor. Curtis challenges the sufficiency of the evidence as the sole issue on appeal.

We affirm.

The facts favorable to the conviction are that on April 17, 2009, at approximately 11:20 p.m., Officer Michael McHenry of the Elkhart County Sheriff's Department watched as a vehicle driven by Curtis turned through the intersection of Bristol Street and County Road 7 in Elkhart Memorial, Indiana. Observing that the turn was too wide, Officer McHenry initiated a traffic stop. When he spoke with Curtis,

---

1. Ind.Code Ann. § 9–30–5–2 (West, Westlaw through 2010 2nd Regular Sess.).

Officer McHenry noted there was a light scent of burnt marijuana emanating from the vehicle and that Curtis's eyes were glassy and bloodshot. Curtis fumbled as he retrieved his driver's license and registration at the officer's request. Officer McHenry asked Curtis if he had consumed any alcohol that evening and Curtis responded in the negative. Officer McHenry asked Curtis to step out of his vehicle and Curtis complied. The officer noted that Curtis swayed as he stood beside the vehicle. At that time, Officer McHenry smelled the odor of burnt marijuana emanating from Curtis's clothing and saw a white film on Curtis's mouth.

Officer McHenry then conducted a battery of standard field sobriety tests, beginning with the horizontal and vertical nystagmus tests. Curtis passed both tests. Next, Curtis was given the ocular-lack-of-convergence test, which he failed. Curtis was then asked to perform the walk-and-turn test. He failed four out of eight metrics of evaluation, including stepping off-line, missing heel-to-toe, raising his hands for additional balance, and failing to properly execute the turn. Failing any two metrics is sufficient to deem the subject to have failed the test.

Curtis next attempted the one-leg-stand test. Curtis failed two of the four test metrics, including swaying and using his hands for balance. Thus, Curtis failed this test as well. As had been the case with the walk-and-turn test, Officer McHenry had to remind Curtis to count out loud during the test. During these tests, Curtis exhibited some mild to moderate tremors, but the tremors ceased when the tests were completed. After completing the field sobriety tests, Officer McHenry asked Curtis to submit to a breath test. Curtis initially hesitated, but then consented both to the breath test and to undergo a drug recognition evaluation (DRE). The portable breath test yielded a result of 0.0.

Curtis was placed in handcuffs. While Officer McHenry was administering the field sobriety tests, Curtis informed him that he was diabetic and needed sugar. He asked the officer to retrieve a piece of candy from his (Curtis's) vehicle and Officer McHenry did so. After Curtis ate the candy, Officer McHenry asked if he needed medical attention and Curtis responded in the negative. Curtis then told the officer that he had eaten dinner and taken his insulin a few hours earlier. It did not appear to Officer McHenry that Curtis was in medical danger. Officer Dustin Lundgren, who had arrived to assist Officer McHenry, transported Curtis to the Elkhart City Police Department and placed him in a chemical test room for his DRE. During the drive, Officer Lundgren noted that Curtis still smelled of burnt marijuana. After arriving at the police station, Curtis requested and received more food and water.

A DRE is a standardized, 12–step program designed to determine whether an individual is impaired. Further, it is possible to infer the type of substance that caused impairment by using a seven-category[2] evaluation matrix. Marijuana belongs to the cannabis category of this matrix. Officer McHenry testified that he had performed ninety-seven documented DREs, more than eighty of which had been confirmed by subsequent chemical analysis.[3] This evaluation process in-

---

**2.** The seven categories are: (1) central nervous system depressants, (2) central nervous system stimulants, (3) hallucinogens, (4) dissociative anesthetics, (5) inhalants, (6) cannabis, and (7) narcotics.

**3.** Officer McHenry explained at trial that the results of a positive DRE can be confirmed only when the subject submits to a blood or urine test and that such did not occur in all cases.

cludes: a breathalyzer test; taking the subject's pulse; asking a series of questions; performing nystagmus and convergence tests; the Romberg-stance test[4]; the walk-and-turn test; the one-leg-stand test; the finger-to-nose test; evaluating vital signs such as temperature, pulse, and blood pressure; checking pupil dilation under different lighting conditions; and examining the subject's nose, mouth, and muscle tone. Officer McHenry determined from the results of these tests that Curtis was impaired by cannabis consumption. At that point, Officer McHenry asked Curtis to submit to a blood draw and Curtis refused. He was then arrested and charged with operating a vehicle while intoxicated as a class A misdemeanor. Following a bench trial, he was convicted of the lesser included offense of operating a vehicle while intoxicated as a class C misdemeanor.

Curtis contends the evidence is not sufficient to sustain the conviction. According to Curtis, Ind.Code Ann. § 9–13–2–86 (West, Westlaw through 2010 2nd Regular Sess.), the statute defining intoxication as used in I.C. § 9–30–5–2, requires that a person be under the influence of one of the listed substances and that the driver's actions, thoughts, and normal control of faculties must be impaired. He contends that the tests administered by Officer McHenry established only that Curtis's *actions* were impaired.

■■■■ Our standard of review for challenges to the sufficiency of evidence is well settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v.*

*State,* 881 N.E.2d 639, 652 (Ind.2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind.2009).

We note that the State addresses the arguments that (1) Curtis was not impaired because he exhibited behavior on the night in question that is inconsistent with a state of intoxication, and (2) to the extent there was impairment of action, it was the result of the complications of diabetes, not the use of marijuana. Although those were his claims below in defending against the charges leveled against him, Curtis's argument on appeal is premised upon a different claim, this one involving the meaning of I.C. § 9–13–2–86. According to Curtis, I.C. § 9–13–2–86 requires an evidentiary showing of impaired conditions of a person's "thought, *and* action *and* loss of normal control of a person's faculties." *Appellant's Brief* at 16 (emphasis in original). He claims the evidence in this case established only an impairment of action.

Curtis was convicted under I.C. § 9–30–5–2, which provides: "(a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor." As used in this statute, "intoxicated" is defined by I.C. § 9–13–2–86 as follows:

> "Intoxicated" means under the influence of:
>
> (1) alcohol;

4. In this test, the subject stands with feet together, eyes open, and hands by the sides, after which the subject closes his or her eyes while the examiner observes for a full minute. The test result is considered positive if the patient sways or falls while the eyes are closed.

(2) a controlled substance (as defined in IC 35–48–1);

(3) a drug other than alcohol or a controlled substance;

(4) a substance described in IC 35–46–6–2 or IC 35–46–6–3; or

(5) a combination of substances described in subdivisions (1) through (4);

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

Curtis contends that because the final clause in the statute employs the conjunctive "and", i.e., "an impaired condition of thought *and* action *and* the loss of normal control of a person's faculties", all conditions specified in the list must be proven in order to attain a conviction under this provision. I.C. § 9–13–2–86 (emphasis supplied). We are called upon to determine the meaning of I.C. § 9–13–2–86 in this regard.

■ Our standard of review in cases where we are called upon to determine the meaning of a statute is well settled:

When faced with a question of statutory interpretation, we first examine whether the language of the statute is clear and unambiguous. If it is, we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings. Our Supreme Court has articulated that, "[t]he primary purpose in statutory interpretation is to ascertain and give effect to the legislature's intent." *State v. Oddi–Smith,* 878 N.E.2d 1245, 1248 (Ind.2008). The statute itself is the best evidence of legislative intent, "and we strive to give the words in the statute their plain and ordinary meaning." *Id.* We construe statutes only where there is some ambiguity which requires construction. The plain mean-

ing of the statute, if it has one, must be given effect.

*Brown v. State,* 912 N.E.2d 881, 894 (Ind. Ct.App.2009) (some internal citations omitted), *trans. denied.* It is our policy to regard the words "and" and "or" as used in statutes as being strictly of a conjunctive and disjunctive nature, respectively. *See In re B.J.,* 879 N.E.2d 7 (Ind.Ct.App. 2008), *trans. denied.* Thus, they typically are not viewed as interchangeable. *See Bourbon Mini Mart, Inc. v. Comm'r, Indiana Dep't of Envtl. Mgmt.,* 806 N.E.2d 14 (Ind.Ct.App.2004). Our Supreme Court, however, has noted that this rule is not without exceptions.

In *Prewitt v. State,* 878 N.E.2d 184 (Ind. 2007), our Supreme Court addressed the argument that because the three actions a court may take upon a finding of probation violation are listed in the disjunctive (i.e., the court may continue probation "or" extend it, "or" execute all or part of the suspended sentence), it may not impose more than one of them upon a finding of violation. *See* Ind.Code Ann. § 35–38–2–3(g) (West, Westlaw through 2010 2nd Regular Sess.). The Court rejected this argument, reasoning that the normal interpretation of those terms "should not be followed rigidly in all cases," especially "when such an application flies in the face of a clearly contrary legislative intent[.]" *Prewitt v. State,* 878 N.E.2d at 186 (quoting *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 418 N.E.2d 207, 211 (1981)). The Court reiterated that our appellate courts are "at liberty to make minor substitutions of words where necessary to give vitality to the legislative intent." *Id.* (quoting *Dague v. Piper Aircraft Corp.,* 418 N.E.2d at 211). Specifically, the Court noted, our "courts have the power to change and will change "and" to "or" and vice versa, whenever such conversion is required by the context, or is necessary to ... effect the obvious intention of the legislature." *Id.*

(quoting *Ind. Dep't of State Rev. v. Stark–Wetzel & Co.*, 150 Ind.App. 344, 276 N.E.2d 904, 910 (1971)). We are not often confronted with a situation where application of this "widely-accepted rule of statutory construction" cited with approval in *Prewitt* is warranted. This is such a case, however, and we apply it here.

■ The purpose of I.C. § 9–30–5–2 is inarguably that of public safety. We need not undertake an explanation of the dangers posed to the public by persons who drive upon Indiana's public thoroughfares while under the influence of a substance mentioned in the statute and impaired as a result thereof. The safe operation of a vehicle requires the effective engagement of one's body, mind, and faculties and thus control over all three. A person who is unable to control his physical movements poses a considerable danger to others when operating a motor vehicle, notwithstanding that he might be able at the time to carry on a lucid conversation or flawlessly count backward from twenty to one. Similarly, if a person exhibits control of his physical movements, but the cognitive abilities or judgment are impaired because of the use of a substance listed in I.C. § 9–30–5–2, such will not lessen the danger to others when, for instance, he miscomprehends his surroundings and executes a flawless turn into oncoming traffic.

■ The plain fact is that impairment of *any* of the three abilities necessary for the safe operation of a vehicle renders the operation of a vehicle dangerous. It is perhaps for this reason that our courts have consistently construed I.C. § 9–30–5–2 and I.C. § 9–13–2–86 such that impairment of thought, action, and the loss of normal control of faculties is not proven in separate, element-by-element fashion. Rather, it is established by evidence of certain behaviors and traits evincing impairment, irrespective of whether that evidence established particularized impairment of action, *and* impairment of thought, *and* loss of control of faculties. *See, e.g., Gatewood v. State*, 921 N.E.2d 45, 48 (Ind. Ct.App.2010) ("[e]vidence of impairment may include: '(1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; [and] (7) slurred speech' "), *trans. denied.* (Quoting *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind.Ct.App.1999)). Viewed thus, a person's unfitness to operate a vehicle, i.e., his impairment, is to be determined by considering his capability as a whole, not component by component, such that impairment of any of the three abilities necessary for the safe operation of a vehicle equals impairment within the meaning of I.C. § 9–30–5–2. Indeed, one might argue that impairment of any of the three necessarily implies impairment of the others.[5]

■ In summary, we reject Curtis's invitation to construe I.C. § 9–30–5–2 such as to require separate proof of impairment of action, and impairment of thought, and loss of control of faculties because such a construction would "[fly] in the face of a clearly contrary legislative intent." *Prewitt v. State*, 878 N.E.2d at 186 (quoting *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d at 211). Instead we conclude that this provision means what our courts have impliedly construed it to mean for years, i.e., that impairment is estab-

5. The thought processes and judgment of a person who drives while physically impaired by alcohol or drugs may be seriously questioned on that basis alone. Similarly, viewed in a certain way, steering heedlessly but intentionally into oncoming traffic is as much a failure of physical control as it is judgment.

lished by proof of certain behaviors and traits evincing impairment, irrespective of whether that evidence established particularized impairment of action, thought, *and* loss of control of faculties.

We turn now to Curtis's claim that the evidence was insufficient to support his conviction for OWI. Curtis concedes that control over his physical actions was impaired at the time of his arrest: "[t]he driver was impaired in his actions because he was unable to pass the tests the officers gave him." *Appellant's Brief* at 12. Indeed, Officer McHenry testified that there was a light scent of burnt marijuana emanating from the vehicle and Curtis's eyes were glassy and bloodshot when he was stopped. Curtis fumbled as he retrieved his driver's license and registration. Curtis swayed as he stood beside the vehicle. We understand that Curtis defended at trial by claiming that these behaviors resulted from a diabetic episode, not a substance listed in I.C. § 9–30–5–2. He does not press that argument upon appeal, but if he did, we would reject the invitation to revisit the trial court's finding on this factual question. The evidence was sufficient to support Curtis's OWI conviction.

Judgment affirmed.

BARNES, J., and CRONE, J., concur.