Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Mar 16 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY S. PRYOR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1108-CR-740 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-1009-CM-4522

**March 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jeffrey S. Pryor appeals his conviction for operating while intoxicated, as a Class C misdemeanor, following a bench trial. The State charged Pryor with a Class A misdemeanor, but the trial court found that the evidence was insufficient to prove endangerment as required to support a conviction for Class A misdemeanor operation of a vehicle while intoxicated. See Dorsett v. State, 921 N.E.2d 529, 532 (Ind. Ct. App. 2010). Pryor presents a single issue for review, namely, whether the evidence is sufficient to support his Class C misdemeanor conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At seven o'clock in the evening on January 16, 2010, Officer Evan McClain of the Noblesville Police Department was dispatched to the area of 10th Street and Pleasant Street to investigate a report of a possible intoxicated driver. Earlier, Valerie McDaniel had reported seeing a black Kia automobile being driven erratically and well below the speed limit on Pleasant Street heading toward 10th Street. Later, Officer McClain found a black Kia at the Speedway gas station at the intersection of 10th Street and Christian Street. When Officer McClain approached the Kia, the car was parked at the entrance of the gas station building, very close to a red barricade post. The passenger side mirror was bent in and the barricade post had black marks the same height as the mirror and consistent with the mirror having struck the post.

Pryor, the only occupant, was in the driver's seat of the vehicle, and the engine was running. When Officer McClain asked for identification, Pryor was unable to

2

verbally identify himself, and he took two and one-half minutes to retrieve his identification from his wallet. Officer McClain observed that Pryor appeared confused, had bloodshot and droopy eyes, had shaking hands, and suffered from slow and very slurred speech. The officer asked Pryor where he was coming from and where he was going, and in both cases Pryor answered "home." Transcript at 19. Pryor denied that he had consumed any alcoholic beverages but stated that he had recently taken Neurontin for pain.

Officer McClain asked Pryor to turn the vehicle off and step outside. Pryor complied, although he "had to pull himself out of the vehicle by grabbing on to the door, the frame area." Id. at 20-21. Once out of the car, Pryor was unsteady on his feet. Officer McClain attempted to administer field sobriety tests, beginning with the Horizontal Gaze Nystagmus ("HGN") test. The officer allowed Pryor several attempts to complete the test, but Pryor "was not following [the officer's] directions." Id. at 21. Because Pryor could not follow instructions, he was unable to complete the HGN test and Officer McClain concluded the test as a failure.

Officer McClain next attempted to administer the walk and turn test. But Pryor was "unable to get into the starting stance" and would start walking before the officer gave directions. Id. at 22. At one point, Pryor walked up to the officer and "stood in front of [the officer] and just stared at [him]." Id. Officer McClain was again unable to complete the test because Pryor was not following the instructions.

Because Pryor had failed the first two field tests, albeit due to non-completion, Officer McClain believed that administering the one-leg stand test was unnecessary.

3

Officer McClain then administered a portable breath test ("PBT") on Pryor followed by reading him the Indiana Implied Consent Warning. Pryor subsequently agreed to submit to a certified chemical test, and Officer Don Hege then transported Pryor to Riverview Hospital. Because Officer McClain did not believe Pryor to be intoxicated by alcohol, he summoned the assistance of a Drug Recognition Expert ("DRE"), and Officer Joshua Blocher, a certified DRE, met Officer McClain and Pryor at Riverview.

At the hospital Officer Blocher interviewed Officer McClain about the test results obtained at the gas station. Officer Blocher then performed a portable breath test on Pryor. He also checked Pryor's pulse, which was high. When Officer Blocher asked Pryor the time, Pryor estimated the time to be five o'clock, when it was actually around eight-thirty. Officer Blocher then measured Pryor's pupil size in various types of light. The pupil size was consistent with someone who had ingested narcotic analgesics. Next, Officer Blocher performed the HGN test, which Pryor failed because he was "physically . . . unable to understand what [Officer Blocher] had asked him to do or physically unable to do it." Id. at 67-68. The next test was the lack of convergence test, which Pryor also failed because he was unable to cross his eyes.

During the tests Officer Blocher observed a tremor in Pryor's eyelids, which can also be indicative of the ingestion of certain drugs. The officer also performed four divided attention tests, which, again, Pryor either was unable to perform or failed. Officer Blocher took Pryor's pulse a second time and found it to be higher still, and he took Pryor's blood pressure, which was also high. High pulse and blood pressure readings can indicate "[t]hat there is something in the [person's] system[.]" Id. at 74.

4

And a physical exam of Pryor's arm muscles showed that they were tense or rigid. Officer Blocher found no injection sites on Pryor. But a third check of Pryor's pulse showed that it was still higher than the first reading and out of the normal range, and his body temperature was lower than normal. Officer Blocher testified that nervousness can cause a person's pulse to be elevated but that the pulse usually comes down over time. Finally, Officer Blocher performed an oral and nasal exam, which "proved clear." Id. at 75-76. Based on the results of the DRE examination, Officer Blocher believed that Pryor was under the influence of a narcotic analgesic and was unable to safely operate a motor vehicle.

The State charged Pryor with operating a motor vehicle while intoxicated, as a Class A misdemeanor. Following a bench trial, the court found Pryor guilty of operating a motor vehicle while intoxicated, as a Class C misdemeanor, and entered judgment of conviction accordingly. The court sentenced Pryor to sixty days in jail, with twenty-four days executed, thirty-six days suspended, and credit for time served, and placed Pryor on supervised probation for one year. Pryor now appeals his conviction.

## DISCUSSION AND DECISION

When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves

5

each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

Pryor contends that the evidence is insufficient to support his conviction for operating a motor vehicle while intoxicated, as a Class C misdemeanor. Specifically, he argues that the evidence is insufficient to show either that he was operating a motor vehicle or that he was intoxicated as contemplated in Indiana Code Section 9-30-5-2. We address each contention in turn.

## Operating a Motor Vehicle

Indiana Code Section 9-30-5-2 provides, in relevant part, that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor." "Operate" is not defined by statute, but an "operator" is,

> when used in reference to a motor vehicle, a person, other than a chauffeur or a public passenger chauffeur, who:
>
> (1) Drives or is in actual physical control of a motor vehicle upon a highway; or
>
> (2) Is exercising control over or steering a motor vehicle being towed by a motor vehicle.

Ind. Code § 9-13-2-118(a). "Thus, to operate a vehicle is to drive it or be in actual physical control of it upon a highway." Crawley v. State, 920 N.E.2d 808, 812 (Ind. Ct. App. 2010), (citing Hampton v. State, 681 N.E.2d 250, 251 (Ind. Ct. App. 1997)), trans. denied. A public highway is a "street, an alley, a road, a highway, or a thoroughfare . . . that is used . . . or open to use by the public." Ind. Code § 9-25-2-4.

A court may consider several factors in determining whether a defendant has "operated" a vehicle: "(1) the location of the vehicle when it is discovered; (2) whether

6

the car was moving when discovered; (3) any additional evidence indicating that the defendant was observed operating the vehicle before he or she was discovered; and (4) the position of the automatic transmission." Crawley, 920 N.E.2d at 812 (citing Hampton, 681 N.E.2d at 251). "In addition to these four factors, '[a]ny evidence that leads to a reasonable inference should be considered.' " Id. (citation omitted) (alteration in original). A conviction for operating while intoxicated may be supported by circumstantial evidence. Dorsett, 921 N.E.2d at 531-32.

Pryor contends that the evidence is insufficient to show that he operated the vehicle, as contemplated by Section 9-30-5-2. His vehicle was parked when Officer McClain found it, and there was no evidence at trial tying a witness' report to dispatch to Pryor's vehicle except that the vehicle reported matched the make, model, and color of Pryor's vehicle.[1] But the evidence, including a video of Officer McClain's gas station interview of Pryor, shows that Pryor was at a public gas station and that he told the officer that he had come from "home." In order to get his vehicle from "home" to the gas station, Pryor had to have used public streets.[2] Although the car was not moving when Officer McClain discovered Pryor at the gas station, the vehicle's engine was running. And Officer McClain's testimony that Pryor's car was "parked" at the gas station indicates that the transmission was not in "drive." Again, we may not reweigh the evidence. Wright, 828 N.E.2d 905-06. But considering these factors together, we

---

[1] Valerie McDaniel testified that she had called 911 to report a black Kia being driven erratically and that she had given dispatch the vehicle's license plate number. But, as the trial court found, there is no evidence in the record indicating what license plate number she gave to dispatch during that call.

[2] The State presented no evidence of Pryor's address at trial. Nevertheless, the gas station is situated at the intersection of 10th Street and Christian Avenue, both public streets.

conclude that circumstantial evidence supports the trial court's conclusion that Pryor had operated the vehicle in order for it to have ended up parked at the gas station. See Dorsett, 921 N.E.2d at 531-32.

## Intoxication

Pryor also contends that the evidence is insufficient to show that he was intoxicated as contemplated in Indiana Code Section 9-30-5-2. As used in that statute, "intoxicated" is defined by Indiana Code Section 9-13-2-86 to mean

> under the influence of:
>
> (1) alcohol;
> (2) a controlled substance (as defined in IC 35-48-1);
> (3) a drug other than alcohol or a controlled substance;
> (4) a substance described in [Indiana Code Section] 35-46-6-2 or [Indiana Code Section] 35-46-6-3; or
> (5) a combination of substances described in subdivisions (1) through (4);
> so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

"[I]mpairment of any of the three abilities necessary for the safe operation of a vehicle[, thought, action, or normal control of a person's faculties,] renders the operation of a vehicle dangerous." Curtis v. State, 937 N.E.2d 868, 873 (Ind. Ct. App. ) (emphasis in original).

> [A] person's unfitness to operate a vehicle, i.e., his impairment, is to be determined by considering his capability as a whole, not component by component, such that impairment of any of the three abilities necessary for the safe operation of a vehicle equals impairment within the meaning of [Indiana Code Section] 9-30-5-2. Indeed, one might argue that impairment of any of the three necessarily implies impairment of the others.

Id. (citations omitted) (emphasis in original). In other words, "impairment is established by proof of certain behaviors and traits evincing impairment, irrespective of whether that

8

evidence established particularized impairment of action, thought, <u>and</u> loss of control of faculties." <u>Id.</u> at 873-74 (emphasis in original).

Here, when Officer McClain first encountered Pryor, Pryor had parked his Kia "inartfully" and unusually close to a barricade post at the gas station. Appellant's Brief at 8. The post bore rubbed off paint markings matching the color of the Kia and the height of the mirror, and the Kia's passenger side mirror was bent in, consistent with having struck the post. Also, Pryor took over two minutes to retrieve his identification from his wallet and was unable to verbally identify himself. He was unable to complete a majority of the field sobriety tests administered by Officer McClain and Officer Blocher, and he failed the tests that he completed. His estimate of the time and of the passage of time were outside of the normal range, and his physical symptoms were consistent with someone who had ingested a narcotic analgesic. And Pryor admitted to having ingested Neurontin, a prescription pain medication. The evidence is sufficient to support Pryor's conviction for operating while intoxicated, as a Class C misdemeanor.

Still, Pryor contends that "[i]mpairment alone is not sufficient to support [a conviction for] Operating while Intoxicated" because "the State must show that the impairment is a result of the defendant being intoxicated." Appellant's Brief at 11. But Pryor admitted that he had ingested Neurontin, and the evidence shows that that medication is available as a prescription to treat pain by affecting the central nervous system. Pryor's admission, when combined with the fact that he failed or was unable to complete the field sobriety tests and his physical symptoms, indicates that he suffered from a condition of thought and action and possibly the loss of normal control of his

9

faculties. Such satisfied the definition of "impairment" under Indiana Code Section 9-13-2-86. The evidence is sufficient to prove beyond a reasonable doubt that Pryor operated a vehicle while intoxicated.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.