



FILED

Aug 21 2025, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Bremni Onelio Villatoro, Lesly Yessenia Dominguez Reyes,
Bremni Onelio Villatoro LLC,

*Appellants*

v.

AmGUARD Insurance Company, d/b/a AmGUARD
Insurance Company—A Stock Company,

*Appellee*

---

August 21, 2025

Court of Appeals Case No.
25A-PL-369

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49D06-2208-PL-27553

---

**Opinion by Judge Brown**
Chief Judge Altice and Judge DeBoer concur.

**Brown, Judge.**

[1] Bremni Onelio Villatoro, Lesly Yessenia Dominguez Reyes, and Bremni Onelio Villatoro LLC (together, "Plaintiffs") appeal the trial court's entry of summary judgment in favor of AmGUARD Insurance Company, d/b/a AmGUARD Insurance Company—A Stock Company ("AmGUARD"). We affirm.

## Facts and Procedural History

[2] On August 15, 2020, Villatoro and Reyes were occupants in a 1993 Toyota pickup truck when it was involved in an accident in Marion County (the "Accident"). Villatoro, the registered owner of the Toyota, was driving at the time of the Accident.

[3] Approximately one month before the Accident, Bremni Onelio Villatoro LLC (the "LLC"), "by and through its sole owner Bremni Onelio Villatoro" purchased Commercial Insurance Policy No. BRAU176049 (the "Commercial Policy") from AmGUARD.[1] Appellants' Appendix Volume II at 19. The declarations page of the Business Auto Coverage Form in the Commercial

---

[1] The effective date of the Commercial Policy was "07/17/2020 to 07/17/2021." Appellants' Appendix Volume II at 49.

Policy provides that the sole named insured under the Commercial Policy is the LLC. Neither Villatoro individually nor Reyes are named insureds under the Commercial Policy. The "form of business" identified on the declarations page of the Commercial Policy is "limited liability company." *Id*. at 50. The "Schedule of Coverages and Covered Autos" provides a limit of $1,000,000 for "Covered Autos Liability" for a premium of $1,233.00, and $1,000,000 for "Uninsured Motorists—Bodily Injury" for a premium of $14.00. *Id*. at 52. "Covered Autos" for liability include "Specifically Described 'Autos' . . . for which a premium charge is shown," "Hired 'Autos'" and "Non-owned 'Autos.'" *Id*. at 52, 91. "Covered Autos" for "Uninsured Motorists – Bodily Injury" include only "Specifically Described 'Autos' . . . for which a premium charge is shown." *Id.* The sole specifically described scheduled "Covered Auto" under the Commercial Policy is listed as a 2009 "Ford Econoline." *Id*. at 54.[2] The Uninsured Motorists Coverage endorsement for the Commercial Policy states:

> For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in Indiana, this endorsement modifies insurance provided under the following
>
> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

---

[2] We note that the Business Auto Coverage Form advises the named insured that certain numerical symbols contained in the "Description of Covered Auto Designation Symbols" describe the "autos" that are covered autos and that the "symbols next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.'" Appellants' Appendix Volume II at 91.

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damage must result from:

a. "Bodily injury" sustained by the 'insured' and caused by an 'accident' with an "uninsured motor vehicle"; or

b. "Property damage" caused by an "accident" with an "uninsured motor vehicle" if the Schedule or Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorists Insurance apply.

The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

* * * * *

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds:"

a. Anyone "occupying" a covered "auto" or a temporary

substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

c. The Named Insured for "property damage" only.

*Id*. at 65-66.

[4] On March 15, 2022, Plaintiffs filed a Complaint for Declaratory Judgment against AmGUARD. They alleged that an uninsured motorist, Frank Nelson, caused the Accident "due to negligence in operating his uninsured vehicle at an 'extremely high rate of speed,' disregarding [P]laintiffs' right of way and generally driving his vehicle in a reckless manner." *Id*. at 18. They alleged that, as a result of the Accident, Villatoro and Reyes sustained bodily injuries. They alleged that the Commercial Policy "provided limits of liability coverage of 1 Million Dollars and limits of [uninsured ("UM")/underinsured ("UIM")] coverage of 1 Million Dollars." *Id*. at 19. Accordingly, they requested the court to declare that the Commercial Policy provides Plaintiffs "One Million Dollars in UM/UIM Coverage with respect to [the Accident.]" *Id*. at 23.

[5] On October 11, 2022, AmGUARD filed its answer denying Plaintiffs' substantive allegations and also specifically denying that Plaintiffs were entitled to UM coverage under the terms of the Commercial Policy. On July 29, 2024, AmGUARD filed a motion for summary judgment, memorandum in support, and designation of evidence arguing that Villatoro and Reyes were not entitled

to UM coverage under the Commercial Policy. On August 22, 2024, Plaintiffs filed a motion for declaratory and summary judgment, memorandum in support of their motion and in opposition to AmGUARD's motion, and designation of evidence. On September 23, 2024, AmGUARD filed its response. On October 20, 2024, Plaintiffs filed their reply.

[6] The trial court held a hearing on December 18, 2024. The parties tendered their proposed findings of fact and conclusions of law on December 29, 2024. On January 21, 2025, the court entered its "Findings of Fact, Conclusions of Law, and Order on Parties' Cross-Motions for Summary Judgment." *Id*. at 9. The court granted AmGUARD's motion for summary judgment and denied Plaintiffs' motions for declaratory and summary judgment concluding that "[t]here is no UM coverage for Plaintiffs under the AmGUARD Policy with respect to this motor vehicle Accident." *Id*. at 17.[3]

---

[3] The Plaintiffs state that, "[o]n the day of [the Accident], Mr. Villatoro had in place three separate liability policies" with combined liability limits of $2,025,000. Appellants' Brief at 19. One of those policies was a "1 Million Dollar" commercial automobile insurance policy through Progressive Commercial and Progressive Southeastern Insurance Company (the "Progressive Policy") with the named insured being the LLC. When purchasing the Progressive Policy, Villatoro signed a document specifically rejecting UM and UIM coverage. After the Accident, Villatoro filed a complaint for declaratory judgment alleging in relevant part that he was entitled to UM coverage under the Progressive Policy. Following a bench trial, the trial court concluded that Villatoro's rejection of UM and UIM coverage was valid and entered declaratory judgment for Progressive. On appeal, we concluded that the trial court did not err when it entered declaratory judgment for Progressive. *Bremni Onelio Villatoro LLC v. Progressive Com.*, No. 23A-CT-2831, 2024 WL 1480092 (Ind. Ct. App. Apr. 5, 2024), *trans. denied*.

**Discussion**

[7] Plaintiffs contend that the trial court erred in entering summary judgment in favor of AmGUARD. Our standard of review is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). Our review is de novo, drawing all reasonable inferences from the evidence in favor of the nonmovant. *Ind. Dep't of Ins. v. Doe*, 247 N.E.3d 1204, 1210 (Ind. 2024) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 designated materials. *Catt v. Bd. of Commr's of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002). Summary judgment "is a desirable tool to allow the trial court to dispose of cases where only legal issues exist." *Hughley*, 15 N.E.3d at 1003.

[8] The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Sterling Com. Credit-Mich., LLC v. Hammert's Iron Works, Inc.*, 998 N.E.2d 752, 756 (Ind. Ct. App. 2013). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id*. The party appealing the trial court's summary judgment determination bears the burden of persuading the appellate court the ruling was erroneous. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Rice*

*v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

[9] Matters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*. "Insurance policies are contracts 'subject to the same rules of judicial construction as other contracts.'" *Id.* at 630 (quoting *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016)). "'In construing a written insurance contract, we may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of an insurance contract.'" *Utica Mut. Ins. Co. v. Precedent Cos.*, 782 N.E.2d 470, 473 (Ind. Ct. App. 2003) (quoting *American States Ins. Co. v. Adair Ins., Inc.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991)). "[P]arties to an insurance contract may not invite judicial construction by creating ambiguity." *Erie Indem. Co.*, 99 N.E.3d at 630. They may not make a term ambiguous by simply offering different policy interpretations. *Id.* "Rather, insurance policy provisions are ambiguous only if they are 'susceptible to more than one reasonable interpretation.'" *Id.* (quoting *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 578 (Ind. 2013)).

[10] In determining whether Plaintiffs Villatoro and Reyes are entitled to UM benefits under the Commercial Policy for the Accident, we begin by looking to the language of the insurance contract and, specifically, the UM endorsement. The Commercial Policy's UM endorsement provides that AmGUARD will pay

"all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'" Appellants' Appendix Volume II at 65. In the case of the "Named Insured" being a limited liability company, "insureds" include "Anyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'" if the "covered 'auto'" is "out of service because of its breakdown, repair, servicing, 'loss' or destruction." *Id*. at 66. The language of the Commercial Policy makes clear that "Covered Autos" for "Uninsured Motorists – Bodily Injury" include only "Specifically Described 'Autos' . . . for which a premium charge is shown." *Id.* The sole specifically described scheduled "Covered Auto" under the Commercial Policy was listed as a 2009 "Ford Econoline." *Id*. at 54. Thus, pursuant to the unambiguous language of the UM endorsement to the Commercial Policy, neither Villatoro nor Reyes qualify as UM insureds with respect to the Accident because the Toyota pickup truck was not a specifically described auto for which a premium charge was shown.

[11] AmGUARD further directs us to a subsection of the UM/UIM Motorist Statute, Ind. Code § 27-7-5-5(b), which governs permissible limitations on the provision of UM coverage and states:

> When the coverage specified in this chapter is written to apply to one (1) or more motor vehicles under a single automobile policy, such coverage applies only to the operation of those motor vehicles for which a specific uninsured or underinsured motorist premium charge has been made and does not apply to the operation of any motor vehicles insured under the policy or

owned by the named insured for which a premium charge has not been made.

[12] The above statutory language provides that UM coverage applies only to the operation of a motor vehicle for which a specific UM premium charge has been made. UM coverage does not apply to the operation of any motor vehicles insured under the policy **or** owned by the named insured for which a premium charge has not been made.[4] Plaintiffs concede that, although the Toyota pickup truck was indeed **not** owned by the named insured (the LLC), the truck **is** insured under the Commercial Policy.[5] As the record indicates that no specific premium was paid for the Toyota, a vehicle insured under the Commercial

---

[4] Plaintiffs argue that this statutory provision is inapplicable because it permits insurers to limit UM coverage to "vehicles insured under the policy" but only "when the vehicle is an owned one" (e.g., owned by the named insured). Appellants' Brief at 39. In other words, Plaintiffs argue that the statute permits an exclusion for an "owned and uninsured vehicle from serving as a basis for an uninsured motorist claim" and that both "vehicular criteria (e.g., owned and uninsured) must be present; whereas neither is present herein." *Id*. at 16, 44. However, Plaintiffs ignore the use of the word "or" as opposed to "and" in the statute. The plain language of the statute provides that UM coverage does not apply to autos insured under the policy **or** autos owned by the named insured for which a premium charge has not been made. "It is our policy to regard the words 'and' and 'or' as used in statutes as being strictly of a conjunctive and disjunctive nature, respectively. *Curtis v. State*, 937 N.E.2d 868, 872 (Ind. Ct. App. 2010) (citing *In re B.J.*, 879 N.E.2d 7 (Ind. Ct. App. 2008), *trans. denied*); *see BP Prods. N. Am., Inc. v. Ind. Off. of Util. Consumer Couns.*, 964 N.E.2d 234, 237 (Ind. Ct. App. 2011) (noting that when a statute is written in the disjunctive, only one of the subsections or requirements need be met). Moreover, to the extent Plaintiffs cite cases to support their claim that only owned **and** uninsured vehicles may be excluded from UM coverage, we find the cases cited to be inapposite or distinguishable. *See, e.g., Veness v. Midland Risk Ins. Co.,* 732 N.E.2d 209, 213 (Ind. Ct. App. 2000) (finding statute inapplicable because, among other things, vehicle on which plaintiff was injured was neither insured under the policy nor owned by the named insured); *IDS v. Kalberer*, 661 N.E.2d 881, 885 (Ind. Ct. App. 1996) (finding statute permitted exclusion of UM coverage because vehicle at issue was both owned by named insured and not insured under policy).

[5] As already noted, "Covered Autos" for liability include "Specifically Described 'Autos' . . . for which a premium charge is shown," "Hired 'Autos'" and "Non-owned 'Autos.'" Appellants' Appendix Volume II at 52, 91. "Non-owned 'Autos'" are "those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business" and includes "'autos' owned by members (if you are a limited liability company)[.]" *Id*. at 91. Thus, the Toyota is insured for liability under the Commercial Policy as a non-owned auto.

Policy, an exclusion of UM coverage is permitted under Indiana law. *See Veness v. Midland Risk Ins. Co.*, 732 N.E.2d 209, 213 (Ind. Ct. App. 2000) (holding that Ind. Code § 27-7-5-5(b) "expressly permits an exclusion from UIM coverage for the operation of a motor vehicle insured under the policy or owned by the named insured for which a premium charge has not been made"); *Progressive Paloverde Ins. v. Arnold*, 16 N.E.3d 993, 997 (Ind. Ct. App. 2014) (holding the insured "did not qualify as insured under this Policy for liability purposes while operating a motorcycle he owned but did not insure through [insurer]," and "[t]herefore, his Policy's uninsured motorist coverage exclusion regarding use of an owned, uninsured auto is not contrary to public policy"), *trans. denied*.

[13] Despite the unambiguous language of the UM endorsement and the permissible limitation on UM coverage provided by Ind. Code § 27-7-5-5(b) for insured or owned autos for which a premium charge has not been made, Plaintiffs assert that the Commercial Policy violates Indiana's "same basis" rule because the Commercial Policy provides "lesser UM protections than its liability counterpart." Appellants' Reply Brief at 12. We observe generally that Indiana law requires insurers to provide underinsured motorist coverage "in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy . . . ." Ind. Code § 27-7-5-2(a)). The public policy objective of the UM/UIM Statute is "to promote the recovery of damages for innocent victims of auto accidents with uninsured or underinsured motorists." *United Nat'l Ins. v. DePrizio*, 705 N.E.2d 455, 459 (Ind. 1999). Thus, the statute "is a mandatory coverage, full-recovery, remedial statute." *Lakes v.*

*Grange Mut. Cas. Co.*, 964 N.E.2d 796, 803 (Ind. 2012). As such, an insurance policy with "less protection" than what is otherwise required under law would be contrary to public policy, and thus be "of no force and effect." *Napier v. Am. Fam. Mut. Ins., S.I.*, 179 N.E.3d 504, 509 (Ind. Ct. App. 2021).

[14] "[L]anguage in an insurance policy which limits or diminishes the protection required by the uninsured motorist statute is contrary to public policy only if it specifically limits uninsured motorist protection as to [a] person who would otherwise qualify as insured for liability purposes." *Progressive Paloverde*, 16 N.E.3d at 997 (quoting *Jackson v. Jones*, 804 N.E.2d 155, 161 (Ind. Ct. App. 2004)). In a nutshell, Indiana's same-basis rule provides that "if a person qualifies as an insured under the liability section of the insurance policy, he must also qualify under the uninsured motorists section or the insurance contract violates public policy." *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 422 (Ind. Ct. App. 2006) (citing *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 222 (Ind. Ct. App. 1997)).

[15] Here, Plaintiffs seek to extend UM coverage to at least Villatoro individually arguing that he qualifies as an "insured" under the Commercial Policy's liability coverage and therefore Indiana law requires UM coverage as well.[6] As

---

[6] We agree with AmGUARD that while Plaintiffs' arguments on appeal appear to "lump Villatoro and Reyes together for purposes of analyzing coverage . . . Reyes' claim is categorically different than that of Villatoro" because "Reyes can only obtain UM coverage if she satisfies the requirements for coverage under the UM endorsement" and she "plainly does not." Appellee's Brief at 24 n.3. As we have already stated, because the Toyota was not a specifically described auto for which a UM premium charge was shown, she was not

the parties agree that the Toyota pickup truck is a "covered auto" that would otherwise be insured under the liability portion of the Commercial Policy when operated by an "insured," the primary issue before this Court is whether the Toyota's owner, Villatoro individually, is an "insured" under the liability portion of the Commercial Policy. We conclude that he is not.

The liability section of the Commercial Policy provides that the following are "insureds:"[7]

> a. You for any covered "auto."[8]
>
> b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:
>
> (1) The owner or anyone else from whom you hire or borrow a covered "auto" . . . .

---

"'occupying' a covered 'auto'" at the time of the Accident, and thus there is no UM coverage for her claim. Appellants' Appendix Volume II at 66.

[7] Plaintiffs contend, without citation to legal authority or cogent explanation, that the "liability definition of an 'insured' is inoperative in determining UM entitlement" under the Commercial Policy and that the "UM [endorsement's] definition of an 'insured' is controlling." Appellants' Brief at 28. This contention is incorrect. The UM endorsement specifically provides: "With respect to coverage provided by this endorsement, the provisions of the [Business Auto] Coverage Form apply unless modified by the endorsement." Appellants' Appendix Volume II at 65. Plaintiffs characterize this as a "modification clause." Appellants' Brief at 28. Not so. The clear language of the UM endorsement provides that modifications to any provisions of the Commercial Policy, which would include the definition of "insured," is controlling only as to the "coverage provided by" the UM endorsement itself, and therefore it does not modify or control whether a person qualifies as an "insured" under the liability section of the Commercial Policy for the purpose of determining same-basis coverage.

[8] As noted by AmGUARD, "You" refers to "the Named Insured shown in the Declarations," which in this case is the LLC. Appellants' Appendix Volume II at 91.

(2) Your "employee" if the covered "auto" is owned by that "employee" or member of his or her household. . . .

\* \* \* \* \*

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

Appellants' Appendix Volume II at 48-49.

[17] We find that all three of the above-mentioned exceptions apply to Villatoro in this case. First, it is undisputed that he is the owner of the "covered" but non-owned (by the LLC) auto, the Toyota. Second, he is the sole employee of the LLC and the Toyota is owned by him. Third, he is the sole member of the LLC and the Toyota is owned by him. Thus, Villatoro was not an "insured" under the liability section of the Commercial Policy as to his operation of his personal vehicle, the Toyota.[9]

---

[9] As noted by AmGUARD, the Commercial Policy "provides [liability] coverage under any number of scenarios—just not when Villatoro is operating his personal, unscheduled pickup truck." Appellee's Brief at 31 n.9. To the extent that Plaintiffs maintain that Ind. Code § 27-1-13-7 "mandates" a provision in the Commercial Policy insuring Villatoro individually against liability for his operation of the Toyota, we disagree. Appellants' Brief at 31. That section provides that an insurance policy "issued or delivered in this state to the owner of a motor vehicle" must contain "a provision insuring the owner against liability for damages for death or injury to a person or property resulting from negligence in the operation of the motor vehicle . . . by any person legally using or operating the motor vehicle with permission, expressed or implied, of the owner." Ind. Code § 27-1-13-7(b)(3). In other words, that section "requires insurance policies issued in Indiana to insure a vehicle owner against liability resulting from the negligence of a permissive user of the vehicle*." N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 184 (Ind. 2006). However, the Commercial Policy was not "issued or delivered" to "the owner" of the Toyota, who was Villatoro individually. The Commercial Policy was issued and delivered to the LLC. Plaintiffs' reliance on Ind. Code § 27-1-13-7 is misplaced.

[18]    Moreover, we observe that the Indiana Supreme Court has recently reiterated that "Indiana's UM/UIM Statute provides that automobile liability insurance policies covering motor vehicles registered or principally garaged in Indiana include uninsured or underinsured motorist coverage 'in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy,' unless the insured has rejected that coverage in writing *or one of the enumerated exceptions applies*." *Loomis v. ACE Am. Ins. Co.*, 244 N.E.3d 908, 913 (Ind. 2024) (citing Ind. Code § 27-7-5-2(a)) (emphasis added). One of the enumerated exceptions, Ind. Code § 27-7-5-2(f), provides:

> An insurer is not required to make available the coverage described in subsection (a) in connection with coverage that:
>
> (1) is related to or included in a commercial policy of property and casualty insurance described in Class 2 or Class 3 of IC 27-1-5-1;[10] and
>
> (2) covers a loss related to a motor vehicle:
>
>> (A) of which the insured is not the owner; and
>>
>> (B) that is used:
>>
>>> (i) by the insured or an agent of the insured; and

---

[10] Ind. Code § 27-1-5-1(f) identifies a "Class 2" insurance policy in part as one intended to "insure against any loss, expense and/or liability resulting from the ownership, maintenance, use and/or operation of any automobile or other motor vehicle, including complete line coverage on automobiles or other motor vehicles." There does not appear to be any dispute that the Commercial Policy fits within this definition.

(ii) for purposes authorized by the insured.

[19] It is undisputed that the LLC did not own the Toyota pickup truck, and that the Toyota was owned and used by Villatoro. Moreover, as the only member of the LLC, it cannot be reasonably disputed that Villatoro was an agent of the LLC and that his use of the Toyota was for purposes authorized by the LLC. Accordingly, pursuant to Ind. Code § 27-7-5-2(f), AmGUARD was not required to provide UM coverage in the Commercial Policy on a non-owned auto, used by an agent of the insured for purposes authorized by the insured.[11]

[20] In sum, neither Villatoro nor Reyes are entitled to UM coverage under the Commercial Policy with respect to the Accident, and we cannot say that the Commercial Policy violates Indiana's UM/UIM Statute or public policy.[12]

---

[11] We reject Plaintiffs' suggestion that the term "insured" does not necessarily mean the "named insured" in "subsection [2](f)'s commercial carve-out." Appellants' Reply Brief at 29. As observed by AmGUARD, subsection 2(f) is "intended to address non-owned autos" which means autos not owned by "You" which we have already noted refers to the named insured. Appellee's Brief at 36. *See, e.g, Procter-Fleece v. Sentry Ins.*, No. 18A-PL-1000, 2018 WL 6055341 (Ind. Ct. App. Nov. 20, 2018) (memorandum decision affirming summary judgment in favor of commercial insurer and holding that Ind. Code § 27-7-5-2(f) exempted insurer from offering UM/UIM coverage for vehicles not owned by its insured (employer); because employee's personal vehicle was a non-owned vehicle, no UIM coverage attached to that vehicle).

[12] We note that Plaintiffs have submitted quite voluminous briefs on appeal, and we decline to specifically address several of their arguments that we summarily find to be without merit. Plaintiffs should not take our failure to address the same as any indication that those arguments were ignored or overlooked. We would remind Appellants' counsel to "avoid the 'kitchen-sink' method of appellate advocacy" as "[l]egal contentions, like . . . currency, depreciate through over-issue." *Reed v. Reid*, 980 N.E.2d 277, 297 (Ind. 2012) (quoting *Martin v. State*, 760 N.E.2d 597, 601 n.3 (Ind. 2002) (citation omitted)).

For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of AmGUARD.

Affirmed.

Altice, C.J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANTS

D. Lance Wittry
Wittry Law Office
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Edward M. O'Brien
Wilson Elser Moskowitz Edelman & Dicker LLP
Louisville, Kentucky